[This opinion has been published in *Ohio Official Reports* at 72 Ohio St.3d 210.]

THE STATE EX REL. PEPSI-COLA BOTTLING COMPANY, APPELLANT, *v.* MORSE ET AL., APPELLEES.

[Cite as *State ex rel. Pepsi-Cola Bottling v. Morse*, 1995-Ohio-82.]

*Workers' compensation—Industrial Commission abuses its discretion in awarding wage-loss compensation, when.*

(No. 93-2350—Submitted February 21, 1995—Decided May 17, 1995.)

APPEAL from the Court of Appeals for Franklin County, No. 92AP-1506.

_____

{¶ 1} Appellee-claimant, Richard J. Morse, injured his shoulder and upper back on July 31, 1987 while in the course of and arising from his employment with appellant, Pepsi-Cola Bottling Company, his self-insured employer. On June 14, 1989, a district hearing officer for appellee Industrial Commission of Ohio allowed Morse's workers' compensation claim, stating:

"Temporary Total [disability compensation] from 12-1-87 through 6-13-89, less Temporary Total [disability compensation] previously paid over the same period in [claim No.] 930436-22[.]

"Compensation awarded based on the medical reports of Doctor Yurich [*sic*].

"District Hearing Officer finds that the claimant cannot return to former position of employment and the employer has no work available within his restrictions, claimant has reached maximum medical improvement.

"It is therefore ordered that claimant be paid wage loss under [R.C.] 4123.56[B] * * * from 6-14-89 forward at the rate of two-thirds of his full weekly wage. Claimant to register with the Bureau of Employment Services and notify self-insured employer when he returns to work."

{¶ 2} No appeal was taken.

**{¶ 3}** On January 15, 1990, Pepsi moved the commission to re-examine claimant's eligibility for wage-loss compensation. At the June 18, 1990 hearing on Pepsi's motion, Pepsi tendered a "Foreign Corporation Application for License" that had been filed with the Secretary of State. The application showed that on February 6, 1990, a Delaware corporation, "The Steelman Corp. dba Al Ganim Lounge," had applied for a permanent license to do business in Ohio, *i.e.,* "to sell and serve liquor, beverages and food to the public." The application contains the signature of a Richard Morse, an officer of the corporation. Also submitted was the Secretary of State's certification of the issuance of a license to "Al Ganim Lounge" on February 20, 1990.

**{¶ 4}** On July 16, 1990, claimant notified Pepsi that he had begun working at Al Ganim's Lounge on July 8, 1990 at $150 per week. On July 17, 1990, the district hearing officer issued his order following the June 1990 hearing:

"The District Hearing Officer grants the employer's motion to the following extent: employer has provided evidence that claimant experienced a change in his employment status as of 2/6/90. Employer alleges claimant now owns the Al Ganiun [*sic*] Lounge. The District Hearing Officer thus orders the issue of further wage loss beyond 2/6/90 held in abeyance until claimant provides evidence of his current weekly earnings or lack thereof. Once said evidence is on file refer to District Hearing Officer docket on issue of further wage loss entitlement."

**{¶ 5}** There was no appeal.

**{¶ 6}** On October 23, 1990, claimant moved:

"[T]hat this claim be set for hearing as soon as possible on the issue of wage loss. This claim has been held in abeyance since June 18, 1990 for the District Hearing Officer's order attached hereto. Pursuant to that order, I would ask that this be set on the DHO docket on the issue of further wage loss entitlement."

**{¶ 7}** Accompanying his motion was a C94-A sworn wage statement that read:

"Pursuant to District Hearing Officer's order of June, 1989, I have registered with the Ohio Bureau of Employment Services and have been actively seeking work since that date. On July 5, 1990, I became employed at Al Ganim's Lounge in Lakewood, Ohio. I have been hired at the rate of $150.00 as a bartender. My previous average weekly wage while employed by Pepsi Cola Bottlers of Ohio was $576.84. I respectfully request that I be found to be suffering a wage loss in the amount of $426.84."

{¶ 8} A transcribed hearing before a district hearing officer occurred on January 7, 1991. Claimant's father, Richard C. Morse, testified that he was the sole shareholder of the Steelman Corporation. He identified his signature as the one on the incorporation documents submitted by Pepsi and testified that he alone owned the bar.

{¶ 9} Claimant's father testified that he paid claimant $150 a week to "ru[n] the bar for me." He stated that claimant set his own hours and came in "[w]henever he wants to work." Claimant corroborated this testimony, indicating that he indeed made $150 a week and generally worked approximately three hours a day, seven days a week. Claimant also submitted a W-2 form for 1990 that showed $3,900 in earnings from the bar.

{¶ 10} Pepsi, in addition to other evidence, offered the purported November 8, 1990 office notes of Dr. Robert S.Yurick, claimant's attending physician. The notes were unsigned, but contained the typed initials "RSY: jd" in the lower right corner. These notes indicated:

"November 8, 1990—Office:

"Dick was seen back at the office today. Apparently had been doing quite well until five to six days before being seen in the office when, driving a truck, was struck broadside and knocked onto the left side of the vehicle and struck his operated, left shoulder. * * * [H]e has had soreness about the shoulder which he did not have prior to. He had been back into basketball and using the arm without

symptoms although he would occasionally have some crepitus, but no pain or disability until the accident."

{¶ 11} Following the hearing on January 7, 1991, the district hearing officer ruled:

"District Hearing Officer grants claimant's motion, filed 10-23-90, to the following extent: claimant is not the owner of the Al Ganim Lounge. The business is owned by the Steelman Corporation, an entity wholly owned by claimant's father, James [*sic*] C. Morse. Claimant began working for the Al Ganim Lounge, as a bartender, on 7-5-90. Claimant is paid $150.00 per week by Al Ganim Lounge/The Steelman Corporation. Wage loss compensation is to continue, from 2-78-90 [*sic*], per proof of earnings submitted."

{¶ 12} The order was administratively affirmed.

{¶ 13} Pepsi filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission had abused its discretion in awarding wage-loss compensation. The appellate court denied the writ.

{¶ 14} This cause is now before this court upon an appeal as of right.

—————————————

*Duvin, Cahn, Barnard & Messerman* and *Jane P. Wilson*, for appellant.

*Sammon & Bolmeyer Co., L.P.A.*, and *Albert Sammon*, for appellee Morse.

*Betty D. Montgomery*, Attorney General, and *Charles Zamora*, Assistant Attorney General, for appellee Industrial Commission.

*Thompson, Hine & Flory, Janis B. Rosenthal* and *Timothy E. Cowans*, urging reversal for amicus curiae, Ohio Council of Retail Merchants.

—————————————

4

*Per Curiam.*

{¶ 15} Both procedural and substantive challenges have been made to the commission's order. Sustaining these objections in part, we reverse the appellate court's judgment.

I

{¶ 16} Questioning Pepsi's ability to maintain this cause of action, claimant points out that Pepsi did not appeal the June 14, 1989 order that first awarded wage-loss compensation. Advancing a theory that combines elements of *res judicata* with failure to exhaust administrative remedies, claimant contends that appellant's cause of action is barred.

{¶ 17} Underlying claimant's argument is the belief that once eligibility for compensation has been established, that eligibility is forever immune from further challenge. This reasoning, however, ignores the limited application of *res judicata* to workers' compensation cases:

"'It is almost too obvious for comment that *res judicata* does not apply if the issue is claimant's physical condition or degree of disability at two entirely different times * * *. A moment's reflection would reveal that otherwise there would be no such thing as reopening for a change in condition. The same would be true of any situation in which the facts were altered by a change in the time frame * * *.'" *State ex rel. B.O.C. Group v. Indus. Comm.* (1991), 58 Ohio St.3d 199, 201, 569 N.E.2d 496, quoting 3 Larson, Workers' Compensation Law (1989), Section 79.72(f).

{¶ 18} Facts were altered by the passage of time in the case at bar. On July 8, 1990, claimant returned to the work force. Because claimant's return, at a minimum, might affect his rate of wage-loss compensation, the commission properly reopened the matter of continuing eligibility for wage-loss compensation.

{¶ 19} The commission's intervention effectively split the wage-loss question into two segments. The first, addressed by the June 14, 1989 order, covers

claimant's period of unemployment from June 14, 1989 through July 7, 1990. The second, determined by the January 7, 1991 order, involved claimant's eligibility for wage-loss compensation while employed from July 8, 1990 forward. Pepsi pursued its administrative remedies as to the latter period, but not the former.

{¶ 20} Pepsi has, therefore, preserved its right to challenge claimant's wage loss over the period of employment following July 7, 1990. It cannot, however, relitigate claimant's entitlement to wage-loss compensation from June 14, 1989 through July 7, 1990. Pepsi attempts to excuse its failure to appeal by arguing that the lack of "some evidence" of wage loss made the June 14, 1989 order void ab initio. Pepsi is incorrect. The lack of "some evidence" does not equate to an order rendered without jurisdiction. Accordingly, Pepsi cannot credibly defend its failure to appeal the June 14, 1989 order, nor can it allege new and changed circumstances sufficient to warrant re-examination of the order. Pepsi's alleged proof of claimant's intent to abandon the labor market existed prior to the initial wage-loss hearing and does not, therefore, represent a new or changed circumstance.

{¶ 21} Having affirmed Pepsi's right to contest wage-loss entitlement from July 8, 1990 forward, we turn to the first of Pepsi's two procedural propositions. Ohio Adm. Code 4121-3-32(D) states:

"[T]he payment of compensation [f]or wage loss pursuant to division (B) of section 4123.56 of the Revised Code shall commence *upon application* with a finding of any of the following* * *[.]" (Emphasis added.)

{¶ 22} The claimant did not file a separate and express request for wage-loss compensation. The only application of any kind before the district hearing officer was claimant's original claim application, *i.e.*, his "C-50" application for payment of compensation and medical expenses. Pepsi argues that the original application may not be construed as an application for wage-loss compensation within the purview of Ohio Adm. Code 4121-3-32(D). We disagree.

**{¶ 23}** Ohio Adm. Code 4121-3-32(D) does not state how an application for wage-loss compensation must be made. However, the fact that the application at issue did not expressly request wage-loss compensation is not conclusive of whether it was indeed such a request. See *State ex rel. Gen. Refractories Co. v. Indus. Comm.* (1989), 44 Ohio St.3d 82, 83, 541 N.E.2d 52, 54. Certainly, the more clearly articulated the request, the better. Under these circumstances, however, we find that the commission did not abuse its discretion in addressing claimant's wage-loss eligibility.

**{¶ 24}** The C-50 form is specifically designed to act as an application for temporary total disability compensation. Given the statutory interrelationship between temporary total disability and wage-loss compensation under R.C. 4123.56, the commission did not err in considering claimant's wage-loss eligibility upon submission of claimant's C-50.

**{¶ 25}** Pepsi's remaining procedural objection involves the commission's failure to subpoena payroll and tax records that Pepsi deemed significant. We again reject Pepsi's argument.

**{¶ 26}** Under R.C. 4123.08, the commission's subpoena power is discretionary. For the purposes of establishing the amount of claimant's earnings, it was within the commission's prerogative to find that the production of payroll and tax records was superfluous given the evidence that was before it, including claimant's W-2 form. As will be discussed *infra*, the commission's determination of claimant's average weekly wage was supported by "some evidence." Accordingly, the commission did not abuse its discretion.

II

{¶ 27} We next turn to the merits of claimant's request for wage-loss compensation. Former R.C. 4123.56(B) read:

"Where an employee in a claim allowed under this chapter suffers a wage loss as a result of returning to employment other than his former position of employment * * *, he shall receive compensation at sixty-six and two-thirds of his weekly wage loss not to exceed the statewide average weekly wage for a period not to exceed two hundred weeks."

{¶ 28} To prevail, a claimant must, therefore, show that he or she has suffered diminished wages as a result of a medical impairment that is causally related to the industrial injury. Pepsi disputes the existence of diminished wages and medical impairment. Pepsi alternatively argues that if one or both do exist, it is not because of the industrial injury.

{¶ 29} Pepsi's dual allegations intersect on the question of medical impairment. Claimant's allowed conditions must underlie claimant's inability to secure comparably paying employment in order for him to be entitled to benefits. In this case, medical evidence submitted by Pepsi suggests that claimant has no impairment from the allowed conditions. That same evidence indicates that the claimant reinjured his shoulder in a nonindustrial auto accident. The commission's order is impermissibly silent on this issue, necessitating a return for further consideration.

{¶ 30} Examining claimant's allegation of diminished wages, we find "some evidence" to support the $150 average weekly wage found by the commission. Documentary and testimonial evidence established a $150 weekly income for claimant. The sole evidence submitted by Pepsi was a private investigator's statement that he overheard claimant tell a bar patron that he (claimant) owned the lounge. Even if accepted, however, it does not prove that claimant's weekly wage exceeded $150. Pepsi's criticism of claimant's evidence is,

therefore, unpersuasive, given the lack of contrary evidence and the commission's exclusive authority to evaluate evidentiary weight and credibility.

{¶ 31} Assuming *arguendo* that $150 accurately reflects claimant's weekly earnings, Pepsi contends that diminution is due to voluntary choice, not an industrially related medical impairment. Specifically, Pepsi argues that (1) claimant has deliberately received underinflated wages, and (2) by taking employment at the tavern as opposed to taking a higher paying job elsewhere, claimant deliberately and voluntarily kept his wages low. Upon review, we find that Pepsi has raised a legitimate issue that the commission wrongly failed to explore.

{¶ 32} Following the lead of decisions on temporary total disability and impaired-earning capacity, *State ex rel. The Andersons v. Indus. Comm.* (1992), 64 Ohio St.3d 539, 597 N.E.2d 143, implies that voluntary acts that limit earnings can bar wage-loss compensation. Pepsi points to two acts which it claims establishes that claimant has deliberately limited his wages.

{¶ 33} The first, and least persuasive, act centers on claimant's ability, as bar manager, to set wages. Pepsi contends that claimant made less than the part-time waiters he supervised; therefore, claimant's failure to set his wages above those he oversaw represented a deliberate limitation of earnings.

{¶ 34} Pepsi's position lacks merit for two reasons. First, without knowing the bar's financial situation—claimant's father testified that it had not turned a profit—claimant's ability to pay himself more is mere speculation. Second, if claimant is making less than his staff, it may stem from hours worked, not hourly rate. Claimant's waiters, before tips, made approximately $4 to $5/hour. Claimant's $150 salary divided by twenty-one hours equals approximately $7/hour—a wage rate higher than that of his staff.

{¶ 35} Pepsi's better argument is one that may ultimately prove inherent whenever lower-paying alternate employment underlies a request for wage-loss compensation -- the reason for taking the job. This is particularly relevant where

the alternate employment is a part-time job, since the combined amount of wages and compensation could produce close to a full-time weekly income for part-time work. Wage-loss compensation was not intended to provide a disincentive to resumption of full-time employment or to subsidize—at the State Insurance Fund's or self-insured employer's expense—a part-time lifestyle. Conversely, if a part-time job is the only work available within a claimant's post-injury capabilities, he or she should not be discouraged from accepting it.

{¶ 36} We find, therefore, that the commission abused its discretion in failing to discuss this issue in this case - so, too, the question of the medical cause of claimant's disability.

{¶ 37} Accordingly, the judgment of the court of appeals is reversed, and the commission is ordered to vacate its order and to reconsider Pepsi's motion in accordance with this opinion.

*Judgment reversed.*

MOYER, C.J., WRIGHT, PFEIFER and COOK, JJ., concur.

DOUGLAS, J., dissents.

RESNICK and F.E. SWEENEY, JJ., dissent and would affirm the judgment of the court of appeals.

—————————————