**[This opinion has been published in *Ohio Official Reports* at 88 Ohio St.3d 1.]**

THE STATE EX REL. RIZER, APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLANTS.

[Cite as *State ex rel. Rizer v. Indus. Comm*., 2000-Ohio-257.]

*Workers' compensation—Mandamus sought ordering Industrial Commission to vacate its denial of claimant's application for wage-loss compensation— Court of appeals' judgment affirmed in part and reversed in part.*

(No. 98-697—Submitted October 12, 1999—Decided February 9, 2000.)

APPEAL from the Court of Appeals for Franklin County, No. 96APD10-1309.

_____

{¶ 1} Susan Rizer, appellee, requested a writ of mandamus ordering appellant Industrial Commission to vacate its denial of her application for R.C. 4123.56(B) wage-loss compensation ("W/L") and to grant this award. The Court of Appeals for Franklin County granted a "limited" writ ordering the commission to completely reassess Rizer's W/L eligibility in a manner consistent with its decision. The commission essentially concedes that Rizer is entitled to reassessment for part of the W/L period for which she applied; however, it appeals as of right to uphold the balance of its order. Appellant Phoenix Products, Inc. ("Phoenix") also appeals as of right, arguing that the commission did not abuse its discretion in denying Rizer's request in its entirety.

{¶ 2} Rizer worked for Phoenix as a quality control inspector and then as an assembler. In the early 1990s, she developed bilateral carpal tunnel syndrome due to the repetitive hand movements required for working in the inspector job. She switched to the assembler position, but by February 1994, her doctor advised Phoenix that she could also no longer safely perform in that job. In response, Phoenix's management apparently tried to find Rizer another position to

accommodate her condition; however, these efforts were unsuccessful, and Phoenix terminated Rizer's employment on March 2, 1994.

{¶ 3} Rizer was unemployed until September 1, 1994,[1] when she accepted a part-time cashier position at grocery store operated by Riser Foods, Inc. Rizer denied any disability on her employment application, but she testified that the longer the hours she worked there, the more her condition bothered her. So on July 5, 1995, Rizer's doctor wrote to Riser Foods management to advise that Rizer should be restricted to five-hour shifts, five days per week. Thereafter, Rizer continued to work as a cashier, usually for less than twenty-five hours per week, until she resigned on December 17, 1995. According to Riser Foods' records, Rizer resigned to accept another job.

{¶ 4} But for approximately the next five months, Rizer was again unemployed. She then accepted another part-time position with a collection agency. A December 15, 1995 letter from her doctor, however, confirmed that she had always been able to work full-time, providing that the work did not require repetitive hand movement.

{¶ 5} In the meantime, the commission recognized Rizer's claim for "bilateral carpal tunnel syndrome" as a compensable occupational disease. And on August 25, 1995, Rizer applied for W/L, alleging a wage-loss period of "September, 1994, to date," apparently referring to the wage loss she suffered from working as a cashier, as compared to an assembler. Later, on May 9, 1996, Rizer amended her application to request a wage-loss period beginning on March 2, 1994, the date she lost her job at Phoenix. To support her request, Rizer submitted some job search information on forms supplied by the Ohio Bureau of Workers' Compensation ("BWC").

---

1. The record is ambiguous as to whether Rizer accepted her new position on September 1 or 9, 1994. For purposes of consistency, we will use the earlier date.

{¶ 6} For a variety of reasons, the commission denied Rizer all W/L from March 2, 1994 to June 6, 1996, the date of her hearing before a commission district hearing officer ("DHO"). Citing four distinctive wage-loss periods, the commission found:

(1)    Rizer was not entitled to W/L from March 2, 1994 until May 8, 1994, because she filed her amended application on May 9, 1996, and R.C. 4123.52 precludes any award "for a back period in excess of two years prior to the date of the filing of the application therefor";

(2)    Rizer was not entitled to W/L from May 9, 1994 to July 4, 1995, because she had no medical restrictions limiting her employment until her doctor recommended restricted work hours on July 5, 1995;

(3)    Rizer was not entitled to W/L from July 5, 1995 until December 17, 1995, the day she quit her cashier job, because she failed to prove her good-faith search for full-time work within her medical restrictions; and finally,

(4)    Rizer was not entitled to W/L from December 18, 1995 until June 6, 1996, because, after she quit her cashier job, she again failed to prove her good-faith search for full-time work within her medical restrictions.

{¶ 7} The court of appeals' magistrate agreed with most of the commission's order; however, he took issue with the commission's denial of W/L from May 9, 1994 through August 31, 1994, the day before Rizer started work for Riser Foods. The magistrate determined that Rizer was potentially entitled to wage loss for this period because (1) she had become unemployed due to a medical condition that precluded her from working at Phoenix, and (2) she professed to have searched for full-time work during this period. As for the period of Rizer's employment as a cashier, the magistrate found that, based on the December 15, 1995 letter from her doctor, Rizer's occupational disease had not caused her wage loss because she had no medical restriction against full-time work that did not require repetitive hand movement for the entire term of her employment at the

grocery. The magistrate therefore recommended a limited writ ordering the commission to assess the quality of Rizer's job search just for May 9, 1994 through August 31, 1994.

{¶ 8} Upon Rizer's and Phoenix's objections, the court of appeals rejected all the reasons the commission and magistrate used to deny Rizer W/L. The court held that Rizer was potentially entitled to all the W/L she had requested and, accordingly, returned the cause to the commission. On further review, the commission was to decide if Rizer had satisfied the remaining standards for W/L relative to each of the four cited periods.

_____

*Betty D. Montgomery*, Attorney General, and *Gerald H. Waterman*, Assistant Attorney General, for appellant Industrial Commission.

*Thompson, Hine & Flory, L.L.P.,* and *J. Kent Breslin,* for appellant Phoenix Products, Inc.

_____

*Per Curiam.*

{¶ 9} This cause presents four questions for our review. First, should Rizer be denied W/L from March 2, 1994 until May 8, 1994, for the reason that this period precedes her amended application by more than two years? Second, should Rizer be denied W/L from May 9, 1994 through August 31, 1994, for the reason that she had no medical restrictions preventing her from working full-time? Third, did Rizer qualify for W/L while she was working part-time work at the Riser Foods grocery? And fourth, should Rizer be denied W/L from December 18, 1995 until June 6, 1996, because she quit her job at the grocery and then did not seek full-time work in good faith?

{¶ 10} For the reasons that follow, we hold that (1) R.C. 4123.52 does not limit Rizer's relief just because she moved to amend her application for compensation, (2) W/L is possible from May 9, 1994 through August 31, 1994,

because Rizer had restrictions effectively preventing her employment as an assembler, and she professed to a good-faith search for full-time work, (3) Rizer is not entitled to W/L from September 1, 1994 until December 17, 1995, because she had no restrictions against full-time work other than those involving repetitive hand movement, and (4) W/L is possible from December 18, 1995 until June 6, 1996, because, as the court of appeals found, Rizer's testimony on this issue suggested that she was looking, to some degree, for full-time work. Accordingly, we affirm in part and reverse in part.

*W/L for March 2, 1994 to May 8, 1994*

{¶ 11} R.C. 4123.52 provides:

"[T]he commission shall not make any modification, change, finding, or award which shall award compensation for a back period in excess of two years prior to the date of filing application therefor."

{¶ 12} The court of appeals decided that R.C. 4123.52 did not preclude the "relation back" of Rizer's May 9, 1996 amendment to her original August 25, 1995 W/L application, such that the two-year period extended back to August 25, 1993 and, thus, included her amended request for W/L as of March 2, 1994. We agree with this result, but not with the court of appeals' reasoning.

{¶ 13} By analogizing to *Dent v. AT&T Technologies, Inc.* (1988), 38 Ohio St.3d 187, 189, 527 N.E.2d 821, 824, the court of appeals concluded that Phoenix had sufficient notice to be held accountable for the earlier W/L. But the analogy does not work. *Dent* held that the commission can exercise R.C. 4123.52 continuing jurisdiction over additional conditions induced by industrial injuries only if the claimant gives notice, pursuant to R.C. 4123.84(A), of the injured body part within two years of injury or death[2]; however, neither an additional condition

---

2. In clarifying the notice requirements under R.C. 4123.84(A), *Dent* particularly established that specific notice of the claimant's medical condition itself was not necessary for continuing jurisdiction. *Id.*, 38 Ohio St.3d at 189, 527 N.E.2d at 824.

nor an industrial injury is involved in this case. Rather, the occupational disease disability at stake here is governed by R.C. 4123.85, which bars occupational disease claims unless they are filed within two years of the date the disability began, or such longer period as does not exceed six months after the disease is diagnosed or within two years of the claimant's death. R.C. 4123.85 simply does not impose notice requirements similar to those in R.C. 4123.84. R.C. 4123.85 governs *only* the time for filing an application for occupational disease compensation; whether the application gives notice to the employer is irrelevant.

{¶ 14} Furthermore, no analogy is required to resolve this issue. In limiting claimants to compensation awards to the two years before the "application therefor," R.C. 4123.52 obviously does not impose a new two-year limitation every time a claimant attempts to amend an application for compensation. The "application therefor" refers to whatever application initiates the particular proceeding that generates either an agency "finding" or "award" or that "modif[ies]" or "change[s]" an administrative order within the meaning of R.C. 4123.52. Rizer applied for a finding that she was entitled to a W/L award, and then she moved to change the substance of her application. She did not move for modification or change of a commission or BWC order. Thus, the "application therefor" must be her initial application for W/L and not any subsequent revision to that application.

{¶ 15} For this reason, Rizer's W/L award cannot be limited to the two years before she amended her application. Accordingly, we affirm the court of appeals that Rizer could qualify for W/L as early as March 2, 1994.

*W/L for May 9, 1994 to August 31, 1994*

{¶ 16} To qualify for wage-loss compensation under R.C. 4123.56(B) and corresponding former Ohio Adm.Code 4121-3-32(D), "a claimant must * * * show that he or she has suffered diminished wages as a result of a medical impairment that is causally related to the industrial injury." *State ex rel. Pepsi-Cola Bottling*

6

*Co. v. Morse* (1995), 72 Ohio St.3d 210, 215, 648 N.E.2d 827, 832. Stated differently, "a medical inability to secure comparably paying work is a prerequisite for wage loss eligibility." *State ex rel. Frederick v. Licking Cty. Dept. of Human Serv.* (1998), 82 Ohio St.3d 227, 230, 694 N.E.2d 1350, 1352; *State ex rel. Williams-Laker v. Indus. Comm.* (1998), 80 Ohio St.3d 694, 697, 687 N.E.2d 1379, 1382. Thus, again contrary to the court of appeals' reasoning, Phoenix's notice of Rizer's allowed condition is not the standard against which Rizer's entitlement must be judged. Rather, Rizer had to prove that her condition prevented her continued employment at Phoenix and made it impossible for her to secure other comparably paying work.

{¶ 17} The magistrate correctly realized that Rizer's doctor had restricted her from continuing in her "current type of job" due to the required hand movement and that she was terminated when Phoenix could not otherwise accommodate her condition. In fact, the record contains a letter from Phoenix's president admitting, in effect, that Rizer was terminated due to the restricted use of her hands. Indeed, none of the parties now disputes that Rizer's carpal tunnel caused her discharge from Phoenix.

{¶ 18} But since the commission initially found no medical restriction, it did not reach the issue of Rizer's good-faith job search. *Pepsi-Cola Bottling, supra*, 72 Ohio St.3d at 216, 648 N.E.2d at 832 (Since W/L is not a subsidy allowing claimant to work part-time when full-time work is available, quality of job search is at issue). The magistrate thus properly recommended a limited writ to return this cause to the commission for that determination. We therefore affirm the court of appeals' judgment to this effect.

*W/L for September 1, 1994 to December 17, 1995*

{¶ 19} Former Ohio Adm.Code 4121-3-32(D)(1) and (3) established the two circumstances under which Rizer could qualify for W/L—either she got a new, lower-paying job because her allowed condition prevented her from doing her old,

higher-paying job, or she could not find any job because of her allowed condition. 1987-1988 Ohio Monthly Record 64. Critical to each is a showing that Rizer's bilateral carpal tunnel syndrome, not any lack of interest or industriousness, caused her inability to secure comparably paying work. *Pepsi-Cola Bottling, supra.* For this reason, the quality of Rizer's job searches and her acceptance of part-time work, as compared to traditional full-time work, is subject to scrutiny. *State ex rel. Jones v. Kaiser Found. Hosp. Cleveland* (1999), 84 Ohio St.3d 405, 406-407, 704 N.E.2d 570, 571.

**{¶ 20}** Rizer's doctor reported that at no time while she was working as a part-time cashier was she restricted from full-time work not requiring repetitive hand movement. Notwithstanding this, Rizer's job search records show that she stopped searching for work completely after she became a cashier on September 1 until she quit on December 17, 1995.

**{¶ 21}** The court of appeals overlooked this evidence when it found that Rizer could possibly qualify for W/L during this period. But a claimant is not entitled to W/L after she voluntarily removes herself from the full-time labor market and becomes satisfied with part-time work. *State ex rel. Reamer v. Indus. Comm.* (1997), 77 Ohio St.3d 450, 452, 674 N.E.2d 1384, 1385. Moreover, the commission does not abuse its discretion as long as "some evidence" supports its conclusion. *State ex rel. Dibble v. Presrite Corp.* (1999), 85 Ohio St.3d 275, 707 N.E.2d 928. The court of appeals' judgment to the contrary, therefore, is reversed.

*W/L for December 18, 1995 to June 6, 1996*

**{¶ 22}** The commission and magistrate refused W/L for this period based mainly on Rizer's testimony at the DHO hearing. But as the court of appeals found, Rizer never admitted to not looking for full-time work. Rather, when asked whether she was "currently looking for full-time employment within [her] restriction," Rizer replied, "Yes, I am." It was only when asked if she had, in effect, any *other* evidence of this that she conceded that she did not.

**{¶ 23}** Moreover, although Rizer's job search log forms were not signed, they reflect job inquiries during January 1996 through April 1996, the months preceding her May 1996 hire at the collection agency. And according to her testimony, Rizer began working part-time at the collection agency because she "needed the job now, and there [was] opportunity for full-time [work] in a higher position, or there [was] a chance to move up." Thus, contrary to the commission's and magistrate's decisions, all the evidence relative to this W/L period suggests a job search, even though it does not establish the quality of that search. Accordingly, we also affirm the court of appeals' decision to return this issue to the commission for this determination.

**{¶ 24}** Based on the foregoing, the court of appeals' judgment with respect to Rizer's first, second, and fourth alleged W/L loss periods is affirmed, and the cause is returned to the commission for further review. The court of appeals' judgment for the third period is reversed, and W/L is denied.

*Judgment affirmed in part*

*and reversed in part.*

MOYER, C.J., DOUGLAS, RESNICK, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

F.E. SWEENEY, J., dissents and would affirm the judgment of the court of appeals.

—————————————