[This opinion has been published in *Ohio Official Reports* at 90 Ohio St.3d 264.]

THE STATE EX REL. SMEGAL, APPELLEE, *v.* INDUSTRIAL COMMISSION,
APPELLANT, ET AL.

[Cite as *State ex rel. Smegal v. Indus. Comm.*, 2000-Ohio-71.]

*Workers' compensation—Industrial Commission has authority to terminate wage-loss compensation as long as "some evidence" of record supports that claimant is no longer qualified for compensation as of that date.*

(No. 99-853—Submitted October 11, 2000—Decided November 8, 2000.)

APPEAL from the Court of Appeals for Franklin County, No. 98AP-173.

_____

{¶ 1} Appellant, the Industrial Commission of Ohio, terminated the wage-loss compensation of appellee, Peggy S. Smegal, as of May 15, 1997. She sought a writ of mandamus requiring the commission to vacate that order, arguing that she was entitled to wage-loss compensation until July 18, 1997. The Court of Appeals for Franklin County agreed and granted the writ, holding that the commission's order was an abuse of discretion. The commission appeals as of right.

{¶ 2} Since 1995, Smegal has been diagnosed with various wrist, hand, and arm conditions resulting from her employment as administrative manager for appellee Key Corporation, f.k.a. Society Corporation ("Key Corp."), a self-insured employer in the workers' compensation system. Her claim was allowed for, among other conditions, bilateral carpal tunnel syndrome. Key Corp. approved Smegal's initial request for wage-loss compensation and paid this compensation from June 29, 1996 until September 1, 1996, about the time that Key Corp. offered her a job that it considered within her medical restrictions.

{¶ 3} Smegal did not accept Key Corp.'s job offer and moved the commission for an order requiring Key Corp. to resume wage-loss compensation as of September 2, 1996, and continuing thereafter. A district hearing officer ("DHO") denied her motion for the period from September 2 through October 7, 1996, finding that Smegal had no medical restriction during that period that prevented her performance in the job Key Corp. had offered. But the DHO also granted Smegal wage-loss compensation to commence as of October 8, 1996, and to continue based "upon submission of proof of wage loss related to the conditions recognized in [her] claim." The DHO ordered Key Corp. to resume wage-loss compensation on October 8, 1996, because, on that date, Smegal's doctor had extended her restrictions beyond the duties the new job would have required. The DHO thus determined, and Key Corp. agreed, that Smegal had again experienced a compensable wage loss from that date.

{¶ 4} Key Corp. paid Smegal wage-loss compensation until July 18, 1997, when it moved to terminate the continuing payments. Key Corp.'s motion was based largely on Dr. Ira J. Ungar's May 9, 1997 report, in which he evaluated Smegal's condition and concluded that she could still work full-time despite her medical restrictions. A DHO denied wage-loss compensation on the ground that Smegal's wage loss was not the result of her employment injury. The DHO explained:

"It is undisputed that the claimant has been working five hours per week as a bookkeeper/receptionist for Abba Express. It is also undisputed that claimant is engaged in her own business as a beauty consultant for Mary Kay Cosmetics.

" * * *

"At hearing, the claimant testified that she works five hours per week at Abba Express and spends 25-30 hours per week as a beauty consultant. When asked to specify what she does each week as a consultant and the amount of time necessary to complete each task, the claimant could only account for approximately 15 hours. She testified that her time is spent doing mail solicitations, phone calls, product delivery, and classes. The claimant testified to working a total of 35-40 hours per week at both of her jobs combined. The claimant has no part-time work restrictions associated with the conditions in this claim. A review of the claimant's 'Weekly Accomplishment Sheets' for the past six months demonstrates that the claimant's 'weekly gross profits' from Mary Kay for each week consistently amounts to less that $100.00 with few exceptions. The claimant frequently earns $20.00 or less a week as a beauty consultant. In addition, the claimant's earnings from this job have not increased since December, 1996, when wage loss was first awarded. The claimant earns $50.00 per week at Abba Express.

"The Hearing Officer finds that the claimant has voluntarily limited both her earnings and the number of hours she works each week. The claimant's lack of earnings cannot be attributed to any physical impairment. Rather, it appears that the significant diminution in her wages is due solely to her own business decision to become self-employed. The claimant limited her search for employment to the two jobs she presently holds. When the wages are combined, she consistently earns less than the minimum wage, assuming that she is working a 35-40 hour week as she alleges (but which is not supported by her own testimony). The claimant has not looked for work anywhere outside of those two jobs."

{¶ 5} Having determined that Smegal had limited her earnings by her own volition, the DHO concluded that Smegal had not diligently tried to return to remunerative employment and, therefore, had not established her right to wage-loss compensation. And based on the employer's clarification that it was objecting "to

the payment of working wage loss subsequent to the filing of the 7/18/97 motion" to terminate payments, the DHO further denied wage-loss compensation for the period from July 18, 1997 to the August 21, 1997 hearing date.

{¶ 6} Smegal appealed, challenging the termination of wage-loss compensation. Key Corp. also appealed, arguing that wage-loss compensation should have been denied up to May 9, 1997, the date of Dr. Ungar's report. A Staff Hearing Officer ("SHO") found that the DHO had properly terminated wage-loss compensation for July 18 through August 21, 1997, due to the voluntary nature of Smegal's wage loss. And since the DHO's order was based on Smegal's decision to work part-time, rather than her confirmed medical capacity to perform full-time duties, the SHO further refused to terminate wage-loss compensation as of May 9, 1997.

{¶ 7} Smegal and Key Corp. appealed the SHO order as well, although Smegal later withdrew her appeal. Key Corp. again insisted that wage-loss compensation should be cut off as of May 9, 1997; however, the commission used a new rationale for terminating Smegal's wage-loss compensation. The commission ordered that wage-loss compensation cease as of May 15, 1997, because on that day new administrative rules took effect under which Smegal failed to qualify. The commission additionally ordered that any overpayment be recouped pursuant to statute.

{¶ 8} Smegal then filed this action in the court of appeals. She argued that by terminating her wage-loss compensation based on the effective date of the new rules, the commission's order violated the ban against retroactive laws in Section 28, Article II of the Ohio Constitution. The magistrate rejected this argument and recommended that a writ of mandamus be denied. He concluded that the new rules merely codified existing common law that already required a good-faith job search and that would have imposed this requirement irrespective of the new wage-loss compensation rules. The court of appeals agreed with the magistrate, but it held that since Key Corp. was a self-insuring employer and had paid wage-loss compensation until it filed its motion on July 18, 1997, the commission could not terminate Smegal's wage-loss compensation for any period occurring before that date.

_____

Weiner, Suit & Coury and Paul W. Newendorp; and Joseph C. Mikolay, for appellee Smegal.

Betty D. Montgomery, Attorney General, and Craigg E. Gould, Assistant Attorney General, for appellant.

*Jones, Davies & Funk, Glenn R. Jones* and *Mary Eileen Purcell*, for Key Corp.

_____

***Per Curiam.***

{¶ 9} To qualify for wage-loss compensation under R.C. 4123.56(B), former Ohio Adm.Code 4121-1-3-32(D) (1987-88 OMR 64), and now Ohio Adm.Code 4125-1-01(D), a claimant must show that "he or she has suffered diminished wages as a result of a medical impairment that is causally related to the industrial injury." *State ex rel. Pepsi-Cola Bottling Co. v. Morse* (1995), 72 Ohio St.3d 210, 215, 648 N.E.2d 827, 832. And since it is the medical inability to secure comparably paying work that qualifies the claimant, *State ex rel. Frederick v. Licking Cty. Dept. of Human Serv.* (1998), 82 Ohio St.3d 227, 230, 694 N.E.2d 1350, 1352, wage-loss compensation must be denied where diminished wages result from a claimant's personal choice to work part-time. *State ex rel. Jones v. Kaiser Found. Hosp. Cleveland* (1999), 84 Ohio St.3d 405, 704 N.E.2d 570. The commission thus properly examined the diligence of Smegal's job search.

{¶ 10} But the main issue before us today is whether the court of appeals erred in terminating Smegal's wage-loss compensation as of July 18, 1997. The court of appeals found, in effect, that since Key Corp. is a self-insured employer and continued to pay wage-loss compensation until July 18, 1997, it effectively conceded Smegal's entitlement for this period and could not invoke the commission's jurisdiction to review it. We disagree.

{¶ 11} R.C. 4123.52 grants the commission continuing jurisdiction, within certain time periods, to "make such modification or change with respect to former findings or orders * * * as, in its opinion is justified." In fact, the commission's jurisdiction to review whether Smegal had actually qualified for wage-loss compensation on a continuing basis is obvious from the DHO order that granted her this compensation. The order specified that payments were to continue "upon submission of proof of wage loss related to the conditions recognized in this claim."

{¶ 12} To sustain the court of appeals' judgment, Smegal relies on *State ex rel. Baker Material Handling Corp. v. Indus. Comm.* (1994), 69 Ohio St.3d 202, 631 N.E.2d 138. *Baker* held that once a self-insured employer certifies a claim as "allowed," even if by mistake, that claim is conclusively allowed. Smegal seems to consider *Baker* analogous to this case, but we are not persuaded to fashion a similar rule for self-insured employers paying wage-loss compensation based on claimant representations of an adequate job search.

{¶ 13} We recently discussed our reluctance to extend *Baker* in *State ex rel. Griffith v. Indus. Comm.* (1999), 87 Ohio St.3d 154, 718 N.E.2d 423. In *Griffith*,

4

we refused to hold a self-insured employer accountable for medical costs attributable to a nonallowed condition just because the employer had paid them unknowingly. There, the claimant's doctor had initially assured the employer that her allowed knee condition required arthroscopic surgery; however, surgical records prepared after the procedure revealed that the surgery was necessitated by claimant's nonallowed arthritis. We could not justify saddling the employer with the costs of this surgery when the employer had paid them in reliance on claimant's medical representations.

{¶ 14} This case presents the same concerns. If we were to hold claimants conclusively entitled to wage-loss compensation merely because the employer paid it pursuant to a commission order requiring payment upon the claimant's submission of proof, our decision would create an overwhelming burden on self-insurers and a windfall for claimants. Self-insured employers would be forced to police not only the diligence of a claimant's job search, but the truth of the claimant's representations on the subject, while unscrupulous claimants would be rewarded for misrepresenting their efforts if the self-insurer failed to root out the fraud.

{¶ 15} We consider these effects untenable. Thus, we hold, consistent with the commission's and Key Corp.'s argument, that the commission had authority to terminate Smegal's wage-loss compensation on any date, whether before or after Key Corp.'s July 18, 1997 motion, as long as "some evidence" of record supported that she no longer qualified for compensation as of that date.

{¶ 16} Accordingly, to the extent that it precluded the commission from terminating Smegal's wage-loss compensation at any time prior to Key Corp.'s July 18, 1997 motion, we reverse the court of appeals' judgment. However, we do not deny relief completely, because none of the parties has justified terminating Smegal's wage-loss compensation as of May 15, 1997 (per the commission order), or, for that matter, any other date of significance in this record. We, therefore, grant a limited writ and return this cause to the commission for further proceedings consistent with our opinion, including for the commission to specify the proper date for terminating Smegal's wage-loss compensation.

*Judgment reversed and modified*
*and limited writ granted.*

MOYER, C.J., F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, J., dissents.

RESNICK, J., dissents and would affirm the judgment of the court of appeals.

---