DECISION
{¶ 1} Relator, Scott Morrow, commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying him wage loss compensation as well as its order declaring an overpayment of wage loss compensation.
 {¶ 2} Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including *Page 2 
findings of fact and conclusion's of law. (Attached as Appendix A.) The magistrate noted that one of the requirements to the receipt of wage loss compensation is that the claimant must demonstrate a good-faith effort to secure suitable employment of comparable pay. A job search is generally required. The magistrate found that relator failed to present any evidence of a job search. Therefore, the magistrate determined that the commission did not abuse its discretion in denying wage loss compensation. For the same reason, the magistrate found that the commission did not abuse its discretion in ordering recoupment pursuant to R.C. 4123.511(J) of wage loss compensation improperly paid to relator. Therefore, the magistrate has recommended that we deny relator's request for a writ of mandamus.
 {¶ 3} Relator filed objections to the magistrate's decision essentially arguing that the magistrate does not explain the reasons for her decision. We disagree. The basis for the magistrate's decision is clear. A claimant is required to demonstrate a good-faith search for suitable employment of comparable pay before the claimant is entitled to non-working and/or working wage loss compensation. State ex rel.Pepsi-Cola Bottling Co. v. Morse (1995), 72 Ohio St.3d 210; State exrel. Reamer v. Ind. Comm. (1997), 77 Ohio St.3d 450; State ex rel. Rizerv. Ind. Comm. (2000), 88 Ohio St.3d 1. Here, because relator failed to demonstrate a good-faith job search, we agree with the magistrate that the commission did not abuse its discretion in denying wage loss compensation. For the same reasons, we also agree with the magistrate that the commission did not abuse its discretion by declaring an overpayment of wage loss compensation paid to relator. Accordingly, we overrule relator's objections. *Page 3 
 {¶ 4} Following an independent review of this matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny relator's request for a writ of mandamus.
Objections overruled; writ of mandamus denied.
 BRYANT and DESHLER, JJ., concur.
DESHLER, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6C, Article IV, Ohio Constitution. *Page 4 
 APPENDIX A MAGISTRATE'S DECISION Rendered on April 11, 2007 IN MANDAMUS {¶ 5} Relator, Scott Morrow, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate two orders: the order denying relator wage loss compensation and the order declaring an overpayment of wage loss compensation which had been paid to him. Relator contends that he is entitled to wage loss compensation and, that in the *Page 5 
event this court affirms the commission's order denying him wage loss compensation, relator contends that R.C. 4123.511(J), which provides for the recoupment of the overpayment, does not apply to him.
Findings of Fact: {¶ 6} 1. Relator was a professional hockey player employed by Cyclones Hockey Club, LP. On December 20, 1997, relator sustained an injury to his shoulder and his claim has been allowed for "left rotator cuff syndrome."
 {¶ 7} 2. Relator received temporary total disability ("TTD") compensation from approximately April 25 through November 21, 1999. On that date, relator accepted employment within his medical restrictions with MCI/WorldCom.
 {¶ 8} 3. Relator requested wage loss compensation and the Ohio Bureau of Workers' Compensation ("BWC") granted the application for the period beginning November 22, 1999.
 {¶ 9} 4. Relator had surgery on his shoulder and was granted another period of TTD compensation while he recovered.
 {¶ 10} 5. Relator's treating physicians Charles R. Crane, M.D., and Randal L. Troop, M.D., both opined that relator could not return to his former position of employment as a professional hockey player. Dr. Troop opined that relator had reached maximum medical improvement ("MMI") as of August 11, 2003.
 {¶ 11} 6. By order mailed August 23, 2004, the BWC relied upon the opinions of Drs. Crane and Troop and found that relator had reached MMI. As a result, the BWC terminated relator's TTD compensation effective August 11, 2003, the date of Dr. Troop's report. *Page 6 
 {¶ 12} 7. In April 2005, relator filed a C-140 application seeking wage loss compensation for the period beginning August 11, 2003 and continuing.
 {¶ 13} 8. In September 2005, relator filed another C-140 which he labeled as amended. On the amended application, relator indicated that from August 11 through December 21, 2003, he was self-employed in sales and marketing and sustained a loss of $3,735. During that same time period, relator indicated that he was also employed with a construction company and earned $9,043.16. Relator further indicated that, from January 2001 and continuing, he remained self-employed in sales and marketing and he attached an IRS schedule C indicating he made $14,468 for 2004. Relator also attached various IRS forms, pay stubs, and his own handwritten accounting of his income for the years 2003, 2004 and 2005. Part of the money relator earned was in the form of commissions paid to him.
 {¶ 14} 9. Relator also submitted an affidavit wherein he stated, in pertinent part:
 [One] Affiant states that he respectfully request THAT HE BE PAID WAGE LOSS from August 11, 2003 forward, which is the date that he reached MMI; it was a week or so after learning that he reached MMI that he began looking for a job.
 [Two] Affiant states that he obtained two jobs, one a part-time job as a hockey coach for a junior hockey team, the second as a carpenter in a family restoration company, and subsequently Affiant lined up several manufacturer's rep.'s to sell for, with a territory being the entire state of Texas.
 [Three] Affiant states that he suffered in his job search as a result of the ongoing restrictions that his orthopedic surgeon had put on his job activities, and in his earnings, as his ongoing medical condition required supervision that prevented him from sales jobs involving the transportation of heavy equipment for demonstration. *Page 7 
 [Four] Affiant states that he has become a sales rep. handling various sports products and various merchandisers, with unlimited sales potential. His monthly sales commission has been increasing from month to month and year to year which should begin to pay him an amount in excess of the amount that he was earning as a professional hockey player. His commissions for the first six months of 2005 have exceeded Four Thousand Dollars ($4,000.00) with an occasional Five Thousand ($5,000.00) month.
 [Five] Affiant states that for subsequent months he should gross over Five Thousand Dollars ($5,000.00) per month in commissions.
(Emphasis sic.)
 {¶ 15} 10. Aside from presenting evidence that he had secured employment, relator did not present any evidence relating to his search for that or any other employment.
 {¶ 16} 11. Relator's application was heard before a district hearing officer ("DHO") on October 28, 2005, and resulted in an order granting compensation as follows:
 The District Hearing Officer awards wage loss from 8-11-03 through 2-11-04 and from 8-30-04 through 2-28-05, per lifting, carrying, pushing and pulling restrictions from Drs. Crane (8-17-03) and Troop (8-30-04) that precluded a return to claimant's former position, and caused a decrease in his earnings.
 Wage loss from 2-12-04 through 8-29-04 and from 3-1-05 through present is denied for lack of contemporaneous evidence of medical restrictions.
 {¶ 17} 12. Both the BWC and relator appealed and the matter was heard before a staff hearing officer ("SHO") on December 8, 2005. The SHO vacated the prior DHO's order in its entirety and denied relator's request for wage loss compensation as follows:
 Request for wage loss benefits from 08/11/2003 to date is denied based on the following. Aside from one undated *Page 8 
C141 submitted on 11/03/2005, there is no evidence of any job search effort made on the claimant's part, to date. Further, there is a lack of ongoing medical treatment in the file, a lack of contemporaneous C140 medical sections filled out and there are no C140 medical forms from a physician of record provided to date. Claimant's evidence of work performed for other employers, from about 11/01/2003 through 02/01/2004 is not accompanied by job search efforts to find comporting full time employment; restrictions noted in Dr. Troop's C140s from 08/30/2004, 02/01/2005 and 11/11/2005. Claimant became self-employed on or about 02/01/2004 yet still no ongoing work search is conducted demonstrating that he was not capable of securing employment at his pre-injury salary. Therefore, based on the above, the Staff Hearing Officer finds that the claimant has failed to meet his burden of proof in support of the requested wage loss and has failed to make a good faith effort to find comparable paying employment.
 {¶ 18} 13. Relator's appeal was refused by order of the commission mailed December 31, 2005.
 {¶ 19} 14. Thereafter, the BWC determined that relator had been overpaid wage loss compensation following the October 28, 2005 DHO's order granting same and the December 8, 2005 SHO's order which vacated that prior DHO's order and denied the entire period of wage loss compensation.
 {¶ 20} 15. Relator appealed the BWC's order which calculated the overpayment and the matter was heard before a DHO on March 17, 2006. The DHO modified the prior BWC's order and calculated the overpayment as follows:
 It is the finding of the District Hearing Officer that the Injured Worker is overpaid $24,897.29, as calculated by the Bureau of Workers' Compensation and set forth in the 2/8/06 order of the Administrator. The Staff Hearing Officer, on 12/8/05, denied wage loss from 8/11/03 to the date of her hearing. As a result, an overpayment of wage loss was created. Injured Worker's counsel argues that the Bureau of Workers' Compensation improperly calculated an overpayment and is *Page 9 
attempting to recoup same. The District Hearing Officer disagrees, finding that Ohio Revised Code Section 4123.511(J) addresses this situation. Inasmuch as the date of injury in this claim is subsequent to the effective date of H.B. 107, this section of the statute controls.
 {¶ 21} 16. Relator appealed and the matter was heard before an SHO on April 27, 2006. The SHO determined that the overpayment had been properly calculated and was to be collected pursuant to R.C.4123.511(J).
 {¶ 22} 17. Relator's further appeal was refused by order of the commission mailed May 20, 2006.
 {¶ 23} 18. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 24} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165. *Page 10 
 {¶ 25} Entitlement to wage loss compensation is governed by R.C.4123.56(B) which provides:
 Where an employee in a claim allowed under this chapter suffers a wage loss as a result of returning to employment other than the employee's former position of employment or as a result of being unable to find employment consistent with the claimant's physical capabilities, the employee shall receive compensation at sixty-six and two-thirds per cent of the employee's weekly wage loss not to exceed the statewide average weekly wage for a period not to exceed two hundred weeks.
 {¶ 26} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached MMI. See R.C. 4123.56(A);State ex rel. Ramirez v. Indus. Comm. (1982), 69 Ohio St.2d 630.
 {¶ 27} In considering a claimant's eligibility for wage loss compensation, the commission is required to give consideration to, and to base the determination on, evidence relating to certain factors including claimant's search for suitable employment. The Supreme Court of Ohio has held that a claimant is required to demonstrate a good-faith effort to search for suitable employment which is comparably paying work before claimant is entitled to both nonworking and working wage loss compensation. State ex rel. Pepsi-Cola Bottling Co. v. Morse (1995),72 Ohio St.3d 210; State ex rel. Reamer v. Indus. Comm. (1997),77 Ohio St.3d 450; and State ex rel. Rizer v. Indus. Comm. (2000), *Page 11 88 Ohio St.3d 1. A good-faith effort necessitates claimant's consistent, sincere, and best attempt to obtain suitable employment that will eliminate the wage loss.
 {¶ 28} Ohio Adm. Code 4125-1-01(A) defines "suitable employment" and "comparably paying work" as follows:
 (7) "Suitable employment" means work which is within the claimant's physical capabilities, and which may be performed by the claimant subject to all physical, psychiatric, mental, and vocational limitations to which the claimant is subject at the time of the injury which resulted in the allowed conditions in the claim or, in occupational disease claims, on the date of the disability which resulted from the allowed conditions in the claim.
 (8) "Comparably paying work" means suitable employment in which the claimant's weekly rate of pay is equal to or greater than the average weekly wage received by the claimant in his or her former position of employment.
 {¶ 29} Ohio Adm. Code 4125-1-01(C) identifies for claimants the relevant information which must be contained in an application for wage loss compensation. Specifically, Ohio Adm. Code 4125-1-01(C)(5) provides:
 (5) All claimants seeking or receiving working or non-working wage loss payments shall supplement their wage loss application with wage loss statements, describing the search for suitable employment, as provided herein. The claimant's failure to submit wage loss statements in accordance with this rule shall not result in the dismissal of the wage loss application, but shall result in the suspension of wage loss payments until the wage loss statements are submitted in accordance with this rule.
 (a) A claimant seeking or receiving wage loss compensation shall complete a wage loss statement(s) for every week during which wage loss compensation is sought.
 (b) A claimant seeking wage loss compensation shall submit the completed wage loss statements with the wage loss *Page 12 
application and/or any subsequent request for wage loss compensation in the same claim.
 (c) A claimant who receives wage loss compensation for periods after the filing of the wage loss application and/or any subsequent request for wage loss compensation in the same claim shall submit the wage loss statements completed pursuant to paragraphs (C)(5)(a), (C)(5)(d) and (C)(5)(e) of this rule every four weeks to the bureau of worker's compensation or the self-insured employer during the period when wage loss compensation is received.
 (d) Wage loss statements shall include the address of each employer contacted, the employer's telephone number, the position sought, a reasonable identification by name or position of the person contacted, the method of contact, and the result of the contact.
 (e) Wage loss statements shall be submitted on forms provided by the bureau of workers' compensation.
 Thereafter, Ohio Adm. Code 4125-1-01(D) provides, in pertinent part:
 (D) The claimant is solely responsible for and bears the burden of producing evidence regarding his or her entitlement to wage loss compensation. Unless the claimant meets this burden, wage loss compensation shall be denied.
 * * *
 In considering a claimant's eligibility for compensation for wage loss, the adjudicator shall give consideration to, and base the determinations on, evidence in the file, or presented at hearing, relating to:
 (1) The claimant's search for suitable employment.
 (a) As a prerequisite to receiving wage loss compensation for any period during which such compensation is requested, the claimant shall demonstrate that he or she has:
 (i) Complied with paragraph (C)(2) of this rule and, if applicable, with paragraph (C)(3) of this rule [relating to the submission of medical evidence]; *Page 13 
 (ii) Sought suitable employment with the employer of record at the onset of the first period for which wage loss compensation is requested. The claimant shall also seek suitable employment with the employer of record where there has been an interruption in wage loss compensation benefits for a period of three months or more; and
 (iii) Registered with the Ohio bureau of employment services and begun or continued a job search if no suitable employment is available with the employer of record.
 (b) A claimant may first search for suitable employment which is within his or her skills, prior employment history, and educational background. If within sixty days from the commencement of the claimant's job search, he or she is unable to find such employment, the claimant shall expand his or her job search to include entry level and/or unskilled employment opportunities.
 (c) A good faith effort to search for suitable employment which is comparably paying work is required of those seeking non-working wage loss and of those seeking working-wage loss who have not returned to suitable employment which is comparably paying work, except for those claimants who are receiving public relief and are defined as work relief employees in Chapter 4127. of the Revised Code. A good faith effort necessitates the claimant's consistent, sincere, and best attempts to obtain suitable employment that will eliminate the wage loss. * * *
 {¶ 30} Ohio Adm. Code 4125-1-01(D)(1)(c) provides certain relevant factors to be considered by the commission in evaluating whether a claimant has made a good-faith effort. Those factors including: the claimant's skills, prior employment history, and educational background; the number, quality, and regularity of contacts made with prospective employers; for a claimant seeking any amount of working wage loss compensation, the amount of time devoted to making prospective employer contacts during the period for which working wage loss is sought, as well as the number of hours spent working, any refusal by the claimant to accept assistance from the BWC in finding *Page 14 
employment; any refusal by the claimant to accept the assistance of any public or private employment agency; labor market conditions; the claimant's physical capabilities; any recent activity on the part of the claimant to change their place of residence and the impact such change would have on the reasonable probability of success and the search for employment; the claimant's economic status; the claimant's documentation of efforts to produce self-employment income; any part-time employment engaged in by the claimant and whether that employment constitutes a voluntary limitation on the claimant's present earnings; whether the claimant restricts a search of employment that would require the claimant to work fewer hours per week than worked in the former position of employment; and whether, as a result of physical restrictions, the claimant is enrolled in a rehabilitation program.
 {¶ 31} In the present case, relator argues the fact that he secured employment which, according to his affidavit, will ultimately eliminate the wage loss, entitles him to wage loss compensation without his having to meet the requirement of providing evidence of his job search. Relator also argues that it was improper to require him to begin any job search as of August 2003, because the BWC did not mail its order finding that he had reached MMI and terminating his TTD compensation until August 24, 2004. Relator argues that the failure of the BWC to mail notice to him until August 2004 negates the requirement that he search for employment beginning August 2003.
 {¶ 32} In the present case, with the exception of a four-month period when he worked in construction, relator was self-employed. On several occasions, the Supreme Court of Ohio has denied wage loss compensation to claimants who, without first conducting a job search, became self-employed after it was medically determined that the *Page 15 
claimant was unable to return to the former position of employment. InState ex rel. Ooten v. Siegel Interior Specialists Co. (1998),84 Ohio St.3d 255, the Supreme Court of Ohio stated:
 Causal relationship is often satisfied by evidence of an unsuccessful search for employment at the pre-injury rate of compensation. While not universally required, mandating a work search under these facts is consistent with our directive to carefully scrutinize alternative employment that is not "regular" full-time work. See State ex rel. Pepsi-Cola Bottling Co. v. Morse (1995), 72 Ohio St.3d 210[.] * * * This is to ensure that the claimant's job choice was motivated by the injury-induced unavailability of other work and was not a lifestyle choice. * * *
 {¶ 33} See, also, State ex rel. Jones v. Kaiser Found. Hosp.Cleveland (1999), 84 Ohio St.3d 405, and State ex rel. Cash v. Indus.Comm. (2000), 88 Ohio St.3d 306. In both these cases, the claimants had secured some employment and requested working wage loss compensation. Neither claimant presented evidence of a job search. Both argued that such evidence was unnecessary by virtue of the fact that they were working now. The commission denied wage loss compensation and ultimately, the Supreme Court of Ohio determined that the commission did not abuse its discretion.
 {¶ 34} As the Ohio Revised Code, Ohio Administrative Code, and the Supreme Court of Ohio have made clear, one of the requirements to the receipt of wage loss compensation is that the claimant must demonstrate that he made a good-faith effort to secure suitable employment which is comparably paying work. While relator is correct to assert that he should not be required to take low-paying menial work when he could make more money on his own, it is the claimant's responsibility to demonstrate that his decision to become self-employed was the best way to alleviate the wage loss. Whether it seems *Page 16 
fair to relator or not, it is not enough that a claimant simply begin working. A job search is required. Relator did not present any evidence of a job search and the magistrate finds that the commission did not abuse its discretion in finding that he was not entitled to wage loss compensation for that reason.
 {¶ 35} Relator also contends that he should at least be awarded wage loss compensation from August 11, 2003 through August 2004, when the BWC mailed him notice that his TTD compensation was being terminated based upon a finding that he had reached MMI. In the present case, this magistrate disagrees.
 {¶ 36} According to the documentation relator submitted, he became employed in August 2003. As such, the date he began his own employment coincides with the report of Dr. Troop who opined that he had reached MMI as of August 11, 2003. Specifically, at paragraph one of his affidavit, relator requested that he be paid wage loss compensation "from August 11, 2003 forward, which is the date that he reached MMI; it was a week or so after learning that he reached MMI that he began looking for a job." Relator's own affidavit contradicts his assertion that he lacked notice of the finding of MMI and the termination of TTD compensation.
 {¶ 37} Further, relator has not asserted that he continued to receive TTD compensation between August 2003 and August 2004. If he would have still been receiving TTD compensation, relator would have continued to be under the impression that he was not permitted to work since claimants are not permitted to work while receiving TTD compensation. Relator's affidavit contradicts the argument which he makes in his brief. Instead, the record indicates that relator knew his TTD compensation was terminated and knew that he needed to seek other employment. Given these *Page 17 
specific facts, the magistrate finds that to the extent that relator raised this argument before the commission, the commission did not abuse its discretion in holding relator accountable for demonstrating entitlement to wage loss compensation from August 11, 2003 through August 24, 2004.
 {¶ 38} Lastly, relator claims that the commission is not entitled to recoup the wage loss compensation which he was overpaid. Relator citesState ex rel. Risien v. Indus. Comm. (1998), 83 Ohio St.3d 332, in support of his argument. Relator's reliance on Risien is misplaced.
 {¶ 39} In Risien, the Supreme Court of Ohio upheld this court's decision. In Risien, the claimant was a professional football player who was forced to retire from football because of his industrial injury. His employer issued severance pay in the gross amount of $130,000. Thereafter, the claimant filed a motion for wage loss compensation. Ultimately, the commission denied wage loss compensation from July 1990 to April 1991 on grounds that claimant had not sought work during that period. Wage loss compensation was granted, however, beginning April 29, 1991, the date the claimant began work as a construction estimator. The commission also held that the award would be offset against any amounts paid to claimant under his contract of hire including the amount of the severance disbursement made to him.
 {¶ 40} The claimant filed a mandamus action in this court challenging the commission's holding that the wage loss award was subject to the offset provision of R.C. 4123.56(C). Although the matter was moot, because the employer had already paid the claimant 200 weeks of wage loss compensation, the statutory maximum payable under R.C. 4123.56(B), this court determined the issue. *Page 18 
 {¶ 41} At the time of the claimant's injury, former R.C. 4123.515
required the employer to pay the wage loss award upon the issuance of the July 1992 order. The employer did so. As such, at the time wage loss compensation was awarded, the claimant had an enforceable right to its receipt pursuant to former R.C. 4123.515. As such, there was no right to recoupment from the claimant of the compensation paid because his right to retain the compensation paid under a valid order was not diminished by the commission's subsequent vacating of that order.
 {¶ 42} The Risien case was controlled by former R.C. 4123.515. In the present case, relator's injury occurred after the effective date of the current statute. R.C. 4123.511(J) controls and provides that if a claimant receives compensation under an order which is later reversed, the BWC shall withhold from any future payments due the claimant the amount of the overpayment. Further, the statute provides a formula for the recoupment so that claimants are not deprived of all future compensation paid immediately, but, instead, a percentage of the compensation paid is recouped.
 {¶ 43} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in denying his application for wage loss compensation and further in finding that the wage loss compensation paid is subject to recoupment under R.C. 4123.511(J). As such, this court should deny relator's request for a writ of mandamus.
 STEPHANIE BISCA BROOKS, MAGISTRATE *Page 1