[Cite as *State ex rel. Roberts v. Indus. Comm.*, 2016-Ohio-7570.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Ronald W. Roberts, | : | |
| Relator, | : | |
| v. | : | No. 15AP-892 |
| Industrial Commission of Ohio and City of Columbus, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on November 1, 2016

**On brief:** *Jon Goodman Law, LLC,* and *Jon H. Goodman,* for relator.

**On brief:** *Michael DeWine*, Attorney General, and *Andrew J. Alatis,* for respondent Industrial Commission of Ohio.

**On brief:** *Richard C. Pfeiffer, Jr.,* City Attorney, and *Susan E. Thompson,* for respondent City of Columbus.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

LUPER SCHUSTER, J.

{¶ 1} Relator, Ronald W. Roberts, initiated this action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order in which the commission exercised its continuing jurisdiction and denied his request for working wage loss ("WWL") compensation and to award that compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued the appended decision,

which includes findings of fact and conclusions of law. The magistrate concluded that the commission abused its discretion when it invoked its continuing jurisdiction and vacated the Staff Hearing Officer's ("SHO") order granting Roberts's request for WWL compensation. Thus, the magistrate recommends this court issue a writ of mandamus ordering the commission to reinstate the SHO's order and award WWL compensation to Roberts.

{¶ 3} The commission has filed the following objections to the magistrate's decision:

> [1.] The Magistrate erred in finding the commission abused its discretion when it exercised continuing jurisdiction based on a mistake of law in the SHO order.
>
> [2.] The Magistrate erred in substituting her own legal standard in place of the existing Statute and Regulations for Ohio working wage loss compensation.
>
> [3.] The Magistrate's Decision voids the clear requirements of the Statute and Administrate Code and requires the commission to disregard current legal standards and apply a newly created standard of "maximum mental and physical level." In her decision, the Magistrate even concedes that her new standard is not at all in the existing law but "can be," and "should be considered as well."
>
> [4.] The Magistrate erred in failing to determine if Roberts's request for WWL compensation complied with the requirements set forth in Ohio Adm.Code 4125-1-01(D).

{¶ 4} Because they are interrelated, we address together all four of the commission's objections. By its objections, the commission asserts the magistrate erred in concluding that it abused its discretion in exercising its continuing jurisdiction to deny Roberts WWL compensation based on its finding that the SHO committed a clear mistake of law. The commission argues that the SHO committed a clear mistake of law in excusing Roberts from searching for suitable and comparably paying employment as required under Ohio Adm.Code 4125-1-01(D)(1)(c). We disagree.

{¶ 5} The commission's power to reconsider a previous decision derives from its general grant of continuing jurisdiction under R.C. 4123.52. *State ex rel. Royal v. Indus.*

*Comm.*, 95 Ohio St.3d 97, 99 (2002). The commission may exercise continuing jurisdiction when one of the following prerequisites is present: "(1) new and changed circumstances, (2) fraud, (3) clear mistake of fact, (4) clear mistake of law, or (5) error by an inferior tribunal." *State ex rel. Gobich v. Indus. Comm.*, 103 Ohio St.3d 585, 2004-Ohio-5990, ¶ 14. Here, the commission identified a purported clear mistake of law as the basis for its continuing jurisdiction. However, because the SHO did not commit a clear mistake of law, the commission abused its discretion in exercising its continuing jurisdiction on that basis.

{¶ 6} R.C. 4123.56(B) provides for compensation for wage loss for persons unable to return to a former position of employment due to a workplace injury or occupational disease but still able to do some work. *State ex rel. Oldaker v. Indus. Comm.*, 143 Ohio St.3d 405, 2015-Ohio-2569, ¶ 8. If eligible, the injured worker may be entitled to receive a percentage of the difference between the prior and current income for up to 200 weeks. *Id.* Entitlement to wage-loss compensation requires a claimant to demonstrate the allowed conditions actually caused wage loss. *Id.* Pursuant to Ohio Adm.Code 4125-1-01(D), a claimant must provide evidence that he has made a "good faith effort to search for suitable employment which is comparably paying work." Former Ohio Adm.Code 4125-1-01(D)(1)(c)[1]; *see Oldaker* at ¶ 9. "Suitable employment" is "work which is within the claimant's physical capabilities." Former Ohio Adm.Code 4125-1-01(A)(7). "Comparably paying work" is "employment in which the claimant's weekly rate of pay is equal to or greater than the average weekly wage received by the claimant in his or her former position of employment." Former Ohio Adm.Code 4125-1-01(A)(8).

{¶ 7} "A good faith effort necessitates the claimant's consistent, sincere, and best attempts to obtain suitable employment that will eliminate the wage loss." Former Ohio Adm.Code 4125-1-01(D)(1)(c). In determining whether a claimant has made a good-faith effort, an adjudicator must review "all relevant factors including, but not limited to" the following: the claimant's skills, prior employment history, and educational background;

---

[1] Ohio Adm.Code 4125-1-01 was revised effective February 13, 2014. The revision renumbered many of that rule's provisions, but they remain "substantially similar to the former provisions." *State ex rel. Oldaker* at fn. 1. Except as expressly noted, references to that rule are to the version in effect when Roberts submitted his application for WWL compensation. *See* 1996-1997 Ohio Monthly Record 1990, effective May 15, 1997.

the number, quality, and regularity of contacts made with prospective employers; for a claimant seeking any amount of WWL compensation, the amount of time devoted to making perspective employer contacts during the period for which WWL is sought; labor market conditions; and the claimant's physical capabilities. Former Ohio Adm.Code 4125-1-01(D)(1)(c)(i)-(xv). As the magistrate noted, because this list is non-exhaustive, a claimant's mental impairment may be considered a relevant factor in evaluating that claimant's job search.

{¶ 8} Although the general rule is that a claimant seeking WWL compensation must make a good-faith effort to search for suitable and comparably paying work, a working claimant's failure to continue to seek higher paying employment may be excused in certain circumstances. *State ex rel. Timken Co. v. Kovach*, 99 Ohio St.3d 21, 2003-Ohio-2450, ¶ 22. For example, in *State ex rel. Brinkman v. Indus. Comm.*, 87 Ohio St.3d 171, 174 (1999), the Supreme Court of Ohio held that the commission abused its discretion in denying WWL compensation and not excusing the claimant's failure to continue his job search after he obtained lucrative part-time work with a realistic possibility that it would become full-time. In *Kovach*, the court found that the commission did not abuse its discretion in excusing the claimant from engaging in a job search because the claimant continued to hold a position with his original employer, with whom he had worked for a long time, had accumulated years toward a pension, and may have qualified for additional vacation and personal days due to his longevity. *Kovach* at ¶ 19-28. As in *Brinkman*, the court in *Kovach* reasoned that it would be "inappropriate to ask a claimant to 'leave a good thing' solely to narrow a wage differential." *Id.* at ¶ 28.

{¶ 9} The commission argues that the magistrate's conclusion that the SHO did not commit a clear mistake of law is contrary to the mandate set forth in former Ohio Adm.Code 4125-1-01(D)(1)(c) and this court's decision in *State ex rel. Wilson v. Indus. Comm.*, 10th Dist. No. 11AP-1092, 2013-Ohio-2449. In *Wilson*, this court found that the commission correctly concluded that the SHO had made a clear mistake of law in not applying the administrative code's job search requirement because the claimant had presented no evidence at the administrative level to demonstrate that any of the "precedential case exceptions [to the job search requirement] applied." *Id.* at ¶ 9. While we acknowledge that the *Wilson* decision strongly suggests that, unless the Supreme

Court of Ohio accepted factual exception to the job search requirement applies, it is a clear mistake of law for the adjudicator to excuse a claimant from continuing to search for a job. However, subsequent case law from this court and case law from the Supreme Court indicates otherwise.

{¶ 10} In *State ex rel. Republic Servs. v. Wright, Inc.*, 10th Dist. No. 13AP-219, 2014-Ohio-312, this court noted the Supreme Court's directive that determining whether to excuse a claimant's decision not to continue to seek comparable employment "must be made on a case-by-case basis." *Id.* at ¶ 8, citing *State ex rel. Yates v. Abbott Laboratories, Inc.*, 95 Ohio St.3d 142, 2002-Ohio-2003. In *Yates*, the Supreme Court observed that whether a job search is necessary is a question that "is not amenable to hard-and-fast rules - - it is very dependent on circumstances." *Yates* at ¶ 36. Further, "the overriding concern in all of these cases - - as it has been since the seminal case of *State ex rel. Pepsi-Cola Bottling Co. v. Morse* (1995), 72 Ohio St.3d 210, 648 N.E.2d 827 - - is the desire to ensure that a lower-paying position - - regardless of hours - - is necessitated by the disability and not motivated by lifestyle choice." *Yates* at ¶ 37; *see Kovach* at ¶ 25 ("In determining whether to excuse a claimant's failure to search for another job," the Supreme Court requires "a broad-based analysis that looks beyond mere wage loss."). Based on the necessity to review each case on its particular facts, the *Wright* court declined to restrict the commission's discretion in excusing the absence of a good-faith job search to the factual confines of Supreme Court cases approving an award of WWL compensation despite the absence of such a search. *See Wright* at ¶ 11; *see also State ex rel. Whirlpool Corp. v. Indus. Comm.*, 10th Dist. No. 09AP-380, 2010-Ohio-255, ¶ 9 (finding that the commission reasonably determined that the claimant was not required to conduct a good-faith job search based on the "circumstances and evidence in [that] case"); *State ex rel. Jackson v. Indus. Comm.*, 10th Dist. No. 08AP-498, 2009-Ohio-1045, ¶ 7 ("the analysis of whether a claimant should be excused for failing to search for comparably paying work must be flexible and broad, and is subject to review on a case-by-case basis").

{¶ 11} Here, as the magistrate explained, the SHO reasonably analyzed the particular facts of this case and determined that Roberts was excused from the general requirement that a claimant seeking WWL compensation demonstrate a good-faith effort

to find suitable and comparably paying work. The SHO found that Roberts is currently working at his physical and mental limitation in performing four to six hours per day of basic administrative duties regarding the management of his rental properties. In reaching that finding, the SHO noted Roberts's serious cognitive impairments that affect his memory, concentration, and attention, and that prevent him from working more than four to six hours per day. Based on the circumstances of this case, the SHO concluded that Roberts's reduction in pay is not a lifestyle choice, and, thus, he is entitled to WWL compensation despite currently not searching for supplemental or other potential employment to narrow or eliminate the pay gap between his former and current employment. Contrary to the commission's finding, the SHO did not commit a clear mistake of law in reaching that determination. The commission was not permitted to exercise continuing jurisdiction based on its disagreement with the SHO's factual conclusions. Therefore, we reject the commission's arguments and agree with the magistrate's determination that the commission abused its discretion in exercising its continuing jurisdiction in this matter.

{¶ 12} Accordingly, all four the commission's objections are overruled.

{¶ 13} Following our independent review of the record, pursuant to Civ.R. 53, we conclude that the magistrate did not err in finding that the commission abused its discretion in invoking its continuing jurisdiction and denying Roberts WWL compensation. The magistrate applied the salient law to the pertinent facts. Accordingly, we adopt the findings of fact and conclusions of law set forth in the magistrate's decision as our own, as clarified herein. Therefore, we overrule the commission's objections to the magistrate's decision and grant Roberts's request for a writ of mandamus. The commission shall vacate its order denying Roberts WWL compensation and reinstate the SHO's order awarding him WWL compensation.

*Objections overruled;*
*writ of mandamus granted.*

DORRIAN, P.J., and TYACK, J., concur.

APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Ronald W. Roberts, | : | |
| Relator, | : | |
| v. | : | No. 15AP-892 |
| Industrial Commission of Ohio and City of Columbus, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

MAGISTRATE'S DECISION

Rendered on June 24, 2016

*Jon Goodman Law, LLC,* and *Jon H. Goodman,* for relator.

*Michael DeWine*, Attorney General, and *Andrew J. Alatis,* for respondent Industrial Commission of Ohio.

*Richard C. Pfeiffer, Jr.,* City Attorney, and *Susan E. Thompson,* for respondent City of Columbus.

IN MANDAMUS

{¶ 14} Relator, Ronald W. Roberts, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order wherein the commission exercised its continuing jurisdiction and denied working wage loss ("WWL") compensation to him.

Findings of Fact:

{¶ 15} 1.  Relator worked as a police officer for the City of Columbus.

{¶ 16} 2.  In the 1980's, relator began purchasing rental properties, ultimately acquiring approximately 19 rental units.

{¶ 17} 3.  Relator has sustained two work-related injuries.  The first, claim No. 96-302522, occurred on January 24, 1996, and is allowed for the following conditions: "sprain thoracic region; sprain lumbar region; sprain of neck; concussion without coma."

{¶ 18} Claim No. 03-802816 occurred on January 20, 2003, and is allowed for the following conditions:  "Sprain of Neck; Sprain Thoracic Region; Sprain Lumbosacral; Sprain of Ankle NOS Right; Sprain of Wrist NOS Bilateral; Sprain Hip & Thigh NOS Right; Carpal Tunnel SYN Bilateral."

{¶ 19} 4.  Following the 1996 injury, relator began having problems with headaches and attention deficits, and began treating with W. Jerry Mysiw, M.D., who prescribed medications for post-concussion syndrome.

{¶ 20} 5.  Relator was unable to continue working as a police officer and applied for disability benefits through the Ohio Police & Fire Pension Fund ("OP&F").

{¶ 21} 6.  By letter dated October 29, 2003, relator was granted disability benefits and retired from the police force.

{¶ 22} 7.  Although unable to continue working as a police officer, relator was able to continue the basic administrative duties regarding the management of his rental properties including ordering supplies, scheduling maintenance, and keeping track of financial matters.  Relator earned $2,000 per month managing his rental properties.

{¶ 23} 8.  In 2005, relator applied for WWL compensation in the 2003 claim and, in an order mailed December 14, 2005, the Ohio Bureau of Workers' Compensation ("BWC") granted relator WWL compensation beginning October 1, 2005.

{¶ 24} 9. Relator continued working on his rental properties and received a full 200 weeks of WWL compensation in the 2003 claim.  *See* BWC order mailed September 21, 2009.

{¶ 25} 10. On March 9, 2010, relator filed a motion for WWL compensation based on the allowed conditions in the 1996 claim. Relator's motion was supported by office notes, reports, and a Medco-14 completed by Dr. Mysiw who indicated that relator was experiencing cognitive fatigue, sensory overload resulting in irritably and/or frustration, unable to sustain cognitive activities due to resulting fatigue, that his plan or decision making was impaired, his organization of materials was diminished, and his initiation was impaired. Dr. Mysiw opined that relator was restricted to working four to six hours a day. Relator also included evidence that he had registered with the Ohio Department of Job & Family Services ("ODJFS"), and he presented at least one check from his rental property company in the amount of $2,000.

{¶ 26} 11. Relator's application was heard before a district hearing officer ("DHO") on May 10, 2010. The DHO denied relator's request for WWL compensation beginning February 9, 2010 finding that relator had failed to meet his burden of proving by a preponderance of the evidence that his alleged wage loss was a result of the allowed conditions in his claim and further, that relator failed to make a good-faith job search.

{¶ 27} 12. Relator appealed and the matter was heard before an SHO on June 11, 2010. The SHO vacated the prior DHO order and awarded relator WWL compensation from February 9 through June 11, 2010, and continuing upon submission of additional evidence. The SHO relied on the Medco-14 report of Dr. Mysiw indicating that relator had relatively severe restrictions and could work no more than four to six hours per day. Thereafter, the SHO discussed the fact that relator owns and manages 19 apartments which were originally managed by an individual hired by relator. After relator could no longer perform his job as a police officer, relator began managing the apartments himself. The SHO found that this job was within the restrictions given by Dr. Mysiw and determined that a good-faith job search was not required because relator was working between four to six hours per day, as restricted by Dr. Mysiw.

{¶ 28} 13. The administrator of the BWC's appeal was refused by order of the commission mailed July 10, 2010.

{¶ 29} 14. The BWC filed a request for reconsideration which was granted based on the commission's determination that the SHO erroneously excused relator's lack of a job search and failed to carefully scrutinize his self-employment.

{¶ 30} 15. The matter was set for hearing on October 14, 2010, and the commission vacated the June 11, 2010 order of the SHO. The commission denied relator's request for WWL compensation finding that relator did not supply tax or accounting records to confirm his testimony that the rental property business was struggling due to a weak economy and was not presently making a profit. The commission also found that relator failed to present sufficient persuasive evidence that his loss of wages was causally related to the claim based on the lack of restrictions in the 1996 claim until February 2010, the lack of any search for employment to eliminate the wage loss, and the lack of any documentation to verify relator's actual wages/earnings. The commission concluded that relator was voluntarily limiting his income and that his chosen work reflected a lifestyle choice.

{¶ 31} 16. While the reconsideration hearing was pending, relator continued to submit evidence to support his request for WWL compensation including updated earnings and medical evidence from Dr. Mysiw.

{¶ 32} 17. On November 22, 2010, relator filed a C-86 motion requesting that his workers' compensation claim be additionally allowed for the following conditions: "Depressive Disorder NEC [sic]" and "Cognitive Disorder."

{¶ 33} 18. Relator was examined by Ken Tecklenburg, Ph.D., who authored a report dated December 14, 2010, wherein he discussed the medical evidence submitted, provided his physical findings on examination, and opined that relator's workers' compensation claim should be additionally allowed for the following conditions: "Depressive disorder NOS" and "Cognitive Disorder NOS."

{¶ 34} 19. In an order mailed January 18, 2011, the BWC relied on the report of Dr. Tecklenburg and granted relator's request for the additional allowances.

{¶ 35} 20. Dr. Mysiw authored a report dated March 4, 2011 indicating that he had been treating relator since 2003 when he sustained a head injury. As a result of the concussion, relator began having problems with headaches, dizziness, and general confusion. Dr. Mysiw indicated that relator also experienced memory deficits for which he used note-taking and post-it notes to help him remember. Relator's continued memory and concentration problems increasingly affected his ability to perform police work and he was awarded OP&F disability in 2003. Dr. Mysiw indicated that he

prescribed Vicodin, Valium, and Aricept to help relator deal with his chronic headaches and cognitive problems. Further, Dr. Mysiw noted that he has consistently restricted relator's ability to work due to these issues specifically noting that relator functions best where he does not have to make quick decisions or engage in activities involving sustained concentration and thought. Dr. Mysiw indicated that he had discussed relator's activities regarding his rental properties specifically noting that relator is able to handle the requirements of this position because he can control his schedule, work a limited number of hours, and has the ability to take breaks as necessary. Dr. Mysiw noted that relator has assistance with financial operations and several contractors with whom he works who perform the majority of actual repairs and maintenance. Dr. Mysiw concluded by stating that relator was working the appropriate number of hours and the work he was performing was acceptable from a physical and cognitive perspective.

{¶ 36} 21. Based on the newly allowed conditions, the updated medical records from Dr. Mysiw, proof of his earnings and extensive accounting, relator filed a C-86 on July 20, 2011 seeking the payment of WWL compensation beginning February 1, 2011.

{¶ 37} 22. The matter was heard before a DHO on September 26, 2011. The DHO specifically noted that the commission had previously denied a request for WWL compensation from February 9 through October 14, 2010. The DHO also noted that relator's claim had been additionally allowed for depressive disorder and cognitive disorder and that he had been granted a 45 percent permanent disability. The DHO further noted that relator had registered with ODJFS and granted his request for WWL compensation.

{¶ 38} 23. The BWC appealed and the matter was heard before an SHO on November 21, 2011. Although the SHO vacated the prior DHO order, the SHO also granted relator's request for WWL compensation from February 1 through May 12, 2011, and continuing upon submission of wage statements and medical restrictions. The SHO specifically noted that the commission had denied a prior period of WWL compensation "because the Injured Worker failed to submit accounting or tax records that would reveal gross receipts of the rental properties the Injured Worker owned, and because the

Injured Worker did not engage in a supplemental job search in order to mitigate his wage loss."

{¶ 39} The SHO granted relator's request for WWL compensation, stating:

> However, the Staff Hearing Officer does grant working wage loss in this claim for the period of 02/01/2011 and further based on the following specific findings. In addition to the prior showing of a wage loss due to the difference between Injured Worker's average weekly wage/full weekly wage (this injury occurred before (05/15/1997) and his current earnings, the Staff Hearing Officer finds based on Dr. Mysiw's 02/25/2011 and 05/12/2011 MEDCO-14's that the Injured Worker cannot return to his former job and the Injured Worker has registered with Ohio Department of Jobs and Family Services as the District Hearing Officer indicated.
>
> Further, pursuant to Dr. Mysiw's 03/04/2011 report, the work the Injured Worker is performing in regards to his rental property company is consistent with Dr. Mysiw's restrictions. Dr. Mysiw stated that the Injured Worker can only work a minimum number of hours per day (four to six hours per the MEDCO-14's), and he cannot be forced to make quick decisions or engage in activities involving sustained concentration.
>
> The Staff Hearing Officer notes that in support of the wage loss application that the Injured Worker has now submitted a twelve month 2010 summary demonstrating the earnings of his rental properties. He also submitted copies of monthly checks for 2011 showing his monthly income of two thousand dollars from R & R Properties. Additionally, submitted is a filed 07/20/2013 statement outlining the annual mortgage payment of $16,922.64 from the owned property in Westerville, Ohio to R & R Properties. Further, there is a 11/21/2005 statement from Charles Pucatori, an accountant, stating to the Injured Worker that there will be $24,000.00 in management fees included in that year's tax return. The Staff Hearing Officer finds that these financial documents do verify the Injured Worker's testimony regarding his income from R & R Properties.

{¶ 40} Thereafter, the SHO discussed whether or not relator should be excused from performing a job search and found that a job search was not necessary.  The SHO explained:

Lastly addressed is the apparent requirement of a supplemental job search. In this light, it is noted that the Injured Worker has another claim, 03-802816. In that claim, the Injured Worker was awarded working wage loss for the maximum 200 weeks based on the same self-employment circumstances as is the case herein, and in that claim no supplemental job search was required. The 12/14/2005 administrator's order in claim 03-802816 is noted granting the working wage loss in claim 03-803816 [sic].

The Staff Hearing Officer is aware that pursuant to <u>Ooten v. Siegel Interior Specialists</u> (1998), 84 Ohio St.3d 255, 256, it was held that a job search is often required in self-employment wage loss cases. However, the Staff Hearing Officer finds that this particular claim does not mandate such a supplemental job search due to the unique restrictions that the Injured Worker has based on the allowed conditions. As Dr. Mysiw explained in his 03/04/2011 report and in his MEDCO-14 reports, the Injured Worker can only work four to six hours a day and the Injured Worker has serious cognitive impairments that affect his memory, concentration and attention such that the Injured Worker suffers mental fatigue. Given these unusually severe restrictions and considering that Dr. Mysiw is stating that the Injured Worker can only perform this type of simple part time work that he is presently performing, the Staff Hearing Officer finds that a supplemental job search would not be mandated in this case as the Injured Worker is presently performing work at his maximum mental and physical level. Consequently, because the Injured Worker is already working at his prescribed level, his work is not a lifestyle choice and he is not limiting his income.

This order is based on testimony adduced at hearing, the MEDCO-14's dated 02/25/2011 and 05/12/2011, Dr. Mysiw's 03/04/2011 report, the monthly earnings statement of the rental properties in 2010, the 2011 monthly checks paid to the Injured Worker from R & R Properties, Mr. Pucatori's 11/21/2005 letter and a review of the Commission order dated 10/14/2010.

{¶ 41} 24. The BWC's appeal was refused by order of the commission mailed December 21, 2011.

{¶ 42} 25.  The BWC filed a request for reconsideration and the matter was heard before the commission on March 22, 2012.  The commission granted the request for reconsideration as follows:

> After further review and discussion, it is the finding of the Industrial Commission that the Administrator has met its burden of proving that the Staff Hearing Officer order, issued 12/01/2011, contains a clear mistake of law of such character that remedial action would clearly follow.
>
> Specifically, the Staff Hearing Officer failed to apply the correct legal standard under Ohio Adm.Code 4125-1-01(D)(1)(c), requiring the Injured Worker to perform a good faith job search in support of his request for working wage loss compensation. The Staff Hearing Officer instead used a "maximum mental and physical level" standard in rendering his decision. Therefore, the Commission exercises continuing jurisdiction pursuant to R.C. 4123.52 and State ex rel. Nicholls v. Indus. Comm., 81 Ohio St. 454, 692 N.E.2d 188 (1998), State ex rel. Foster v. Indus. Comm., 85 Ohio St.3d 320, 707 N.E.2d 1122 (1999), and State ex rel. Gobich v. Indus. Comm., 103 Ohio St.3d 585, 2004-Ohio-5990, 817 N.E.2d 398 in order to correct this error.

{¶ 43} Thereafter, the commission denied relator's request, stating:

> The Commission continues to find the Injured Worker has failed to provide sufficient documentation to verify his loss of wages and income. In addition, the Injured Worker has failed to prove that the loss of wages is causally related to the allowed conditions in the claim. The Commission finds that the Injured Worker has failed to provide persuasive documentation of a specific weekly or monthly income, which calls into question the validity of this documentation. The Commission notes the Injured Worker failed to submit any accounting or tax records that would verify that the $2,000.00 per month is an appropriate wage. The financial documents submitted at hearing were copies of operating statements from his management company. Therefore, it cannot be determined whether the amount the Injured Worker, as a self-employed individual, pays himself is what is being reported for tax purposes or whether the amount reflects a reasonable amount for the work the Injured Worker is performing.

Furthermore, the Injured Worker has again failed to provide any evidence of a job search to eliminate his wage loss, as stated in the Commission order of 10/14/2010, a high scrutiny was set for the self-employed Injured Worker to engage in a good faith job search as required by State ex rel. Ooten v. Siegel Interior Specialists Co., 1998-Ohio-534, 84 Ohio St.3d 255, 703 N.E.2d 306. Dr. Mysiw has consistently indicated in his Medco-14 form that the Injured Worker is limited to a 4 to 6 hour work day performing sedentary to light work duties. Dr. Mysiw has also repeatedly indicated, "The residual cognitive deficits from the brain injury affect his work capacity." However, it is clear from those same forms that the Injured Worker nonetheless retains a capacity for work yet he continues to neglect to do a job search as is required by statute.

Finally, although the claim has been additionally allowed for depressive disorder, and cognitive disorder, the work restrictions that Dr. Mysiw continues to impose are the same now as they were prior to the additional conditions being recognized. These additional conditions have not altered the Injured Worker's ability to work and therefore, cannot serve as a basis for finding a wage loss.

Accordingly, the Commission finds that the Injured Worker's management of his rental properties in the manner that he has chosen, by reinvesting profits back into the company to make further improvements and property purchases is a voluntary choice on his part to limit his income. The Injured Worker's decision to not seek other employment within his restrictions and to concentrate solely on his business is a lifestyle choice. Therefore, it is the order of the Commission that the Injured Worker's most recent C-86 Motion filed 07/20/2011, requesting wage loss compensation from 02/01/2011 to 05/12/2011 and continuing be denied.

{¶ 44} 26. Thereafter, relator filed the instant mandamus action.

Conclusions of Law:

{¶ 45} Relator argues that the commission abused its discretion when it invoked its continuing jurisdiction vacating the SHO order following the November 21, 2011 hearing and denying his application for WWL compensation. For the reasons that follow, it is this magistrate's decision that the commission did abuse its discretion when it invoked its continuing jurisdiction.

{¶ 46} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law.  *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 47} Pursuant to R.C. 4123.52, "[t]he jurisdiction of the industrial commission and the authority of the administrator of workers' compensation over each case is continuing, and the commission may make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion is justified."  In *State ex rel. B & C Machine Co. v. Indus. Comm.*, 65 Ohio St.3d 538, 541-42 (1992), the court examined the judicially-carved circumstances under which continuing jurisdiction may be exercised, and stated as follows:

> R.C. 4123.52 contains a broad grant of authority. However, we are aware that the commission's continuing jurisdiction is not unlimited. See, *e.g., State ex rel. Gatlin v. Yellow Freight System, Inc.* (1985), 18 Ohio St.3d 246, 18 OBR 302, 480 N.E.2d 487 (commission has inherent power to reconsider its order for a reasonable period of time absent statutory or administrative restrictions); *State ex rel. Cuyahoga Hts. Bd. of Edn. v. Johnston* (1979), 58 Ohio St.2d 132, 12 O.O.3d 128, 388 N.E.2d 1383 (just cause for modification of a prior order includes new and changed conditions); *State ex rel. Weimer v. Indus. Comm.* (1980), 62 Ohio St.2d 159, 16 O.O.3d 174, 404 N.E.2d 149 (continuing jurisdiction exists when prior order is clearly a mistake of fact); *State ex rel. Kilgore v. Indus. Comm.* (1930), 123 Ohio St. 164, 9 Ohio Law Abs. 62, 174 N.E. 345 (commission has continuing jurisdiction in cases involving fraud); *State ex rel. Manns v. Indus. Comm.* (1988), 39 Ohio St.3d 188, 529 N.E.2d 1379 (an error by an inferior tribunal is a sufficient reason to invoke continuing jurisdiction); and *State ex rel. Saunders v. Metal Container Corp.* (1990), 52 Ohio St.3d 85, 86, 556 N.E.2d 168, 170 (mistake must be "sufficient to invoke the continuing jurisdiction provisions of R.C. 4123.52").  Today, we expand the list set forth above and hold that the Industrial Commission has the authority pursuant to R.C. 4123.52 to modify a prior order that is clearly a mistake of law.

{¶ 48} The commission gave the following reason for invoking its continuing jurisdiction:

> [T]he Staff Hearing Officer failed to apply the correct legal standard under Ohio Adm.Code 4125-1-01(D)(1)(c), requiring the Injured Worker to perform a good faith job search in support of his request for working wage loss compensation. The Staff Hearing Officer instead used a "maximum mental and physical level" standard in rendering his decision.

{¶ 49} The SHO instead used a "maximum mental and physical level" in rendering his decision. If the SHO applied the wrong legal standard, a clear mistake of law would indeed have occurred and the commission's exercise of continuing jurisdiction would be appropriate.

{¶ 50} Turning to the SHO's order, the magistrate notes that the SHO determined, in this instance, that relator was excused from continuing to search for suitable employment. The SHO reasoned as follows:

> Lastly addressed is the apparent requirement of a supplemental job search. In this light, it is noted that the Injured Worker has another claim, 03-802816. In that claim, the Injured Worker was awarded working wage loss for the maximum 200 weeks based on the same self-employment circumstances as is the case herein, and in that claim no supplemental job search was required. The 12/14/2005 administrator's order in claim 03-802816 is noted granting the working wage loss in claim 03-803816 [sic].
>
> The Staff Hearing Officer is aware that pursuant to Ooten v. Siegel Interior Specialists (1998), 84 Ohio St.3d 255, 256, it was held that a job search is often required in self-employment wage loss cases. However, the Staff Hearing Officer finds that this particular claim does not mandate such a supplemental job search due to the unique restrictions that the Injured Worker has based on the allowed conditions. As Dr. Mysiw explained in his 03/04/2011 report and in his MEDCO-14 reports, the Injured Worker can only work four to six hours a day and the Injured Worker has serious cognitive impairments that affect his memory, concentration and attention such that the Injured Worker suffers mental fatigue. Given these unusually severe restrictions and considering that Dr. Mysiw is stating

that the Injured Worker can only perform this type of simple part time work that he is presently performing, the Staff Hearing Officer finds that a supplemental job search would not be mandated in this case as the Injured Worker is presently performing work at his maximum mental and physical level. Consequently, because the Injured Worker is already working at his prescribed level, his work is not a lifestyle choice and he is not limiting his income.

{¶ 51} Entitlement to wage loss compensation is governed by R.C. 4123.56(B), which provides:

Where an employee in a claim allowed under this chapter suffers a wage loss as a result of returning to employment other than the employee's former position of employment or as a result of being unable to find employment consistent with the claimant's physical capabilities, the employee shall receive compensation at sixty-six and two-thirds per cent of the employee's weekly wage loss not to exceed the statewide average weekly wage for a period not to exceed two hundred weeks.

{¶ 52} In order to receive workers' compensation, a claimant must show not only that a work-related injury arose out of and in the course of employment, but, also, that a direct and proximate causal relationship exists between the injury and the harm or disability. *State ex rel. Waddle v. Indus. Comm.* (1993), 67 Ohio St.3d 452. This principle is equally applicable to claims for wage loss compensation. *State ex rel. The Andersons v. Indus. Comm.* (1992), 64 Ohio St.3d 539. As noted by the court in *State ex rel. Watts v. Schottenstein Stores Corp.* (1993), 68 Ohio St.3d 118, a wage loss claim has two components: a reduction in wages and a causal relationship between the allowed condition and the wage loss.

{¶ 53} In considering a claimant's eligibility for wage loss compensation, the commission is required to give consideration to, and to base the determination on, evidence relating to certain factors, including claimant's search for suitable employment. The Supreme Court of Ohio has held that a claimant is required to demonstrate a good-faith effort to search for suitable employment which is comparably paying work before claimant is entitled to both nonworking wage loss and working wage loss compensation. *State ex rel. Pepsi-Cola Bottling Co. v. Morse* (1995), 72 Ohio St.3d 210; *State ex rel.*

*Reamer v. Indus. Comm.* (1997), 77 Ohio St.3d 450; and *State ex rel. Rizer v. Indus. Comm.*, 88 Ohio St.3d 1 (2000). A good-faith effort necessitates claimant's consistent, sincere, and best attempt to obtain suitable employment that will eliminate the wage loss.

{¶ 54} Ohio Adm.Code 4125-1-01(A) defines "suitable employment" and "comparably paying work" as follows:

> (7) "Suitable employment" means work which is within the claimant's physical capabilities, and which may be performed by the claimant subject to all physical, psychiatric, mental, and vocational limitations to which the claimant is subject at the time of the injury which resulted in the allowed conditions in the claim or, in occupational disease claims, on the date of the disability which resulted from the allowed conditions in the claim.
>
> (8) "Comparably paying work" means suitable employment in which the claimant's weekly rate of pay is equal to or greater than the average weekly wage received by the claimant in his or her former position of employment.

{¶ 55} Ohio Adm.Code 4125-1-01(C) identifies for claimants the relevant information which must be contained in an application for wage loss compensation. Specifically, Ohio Adm.Code 4125-1-01(C)(5) provides:

> (5) All claimants seeking or receiving working or non-working wage loss payments shall supplement their wage loss application with wage loss statements, describing the search for suitable employment, as provided herein. The claimant's failure to submit wage loss statements in accordance with this rule shall not result in the dismissal of the wage loss application, but shall result in the suspension of wage loss payments until the wage loss statements are submitted in accordance with this rule.
>
> (a) A claimant seeking or receiving wage loss compensation shall complete a wage loss statement(s) for every week during which wage loss compensation is sought.
>
> (b) A claimant seeking wage loss compensation shall submit the completed wage loss statements with the wage loss application and/or any subsequent request for wage loss compensation in the same claim.

(c) A claimant who receives wage loss compensation for periods after the filing of the wage loss application and/or any subsequent request for wage loss compensation in the same claim shall submit the wage loss statements completed pursuant to paragraphs (C)(5)(a), (C)(5)(d) and (C)(5)(e) of this rule every four weeks to the bureau of worker's compensation or the self-insured employer during the period when wage loss compensation is received.

(d) Wage loss statements shall include the address of each employer contacted, the employer's telephone number, the position sought, a reasonable identification by name or position of the person contacted, the method of contact, and the result of the contact.

(e) Wage loss statements shall be submitted on forms provided by the bureau of workers' compensation.

{¶ 56} Thereafter, Ohio Adm.Code 4125-1-01(D) provides, in pertinent part:

(D) The claimant is solely responsible for and bears the burden of producing evidence regarding his or her entitlement to wage loss compensation. Unless the claimant meets this burden, wage loss compensation shall be denied.

* * *

In considering a claimant's eligibility for compensation for wage loss, the adjudicator shall give consideration to, and base the determinations on, evidence in the file, or presented at hearing, relating to:

(1) The claimant's search for suitable employment.

(a) As a prerequisite to receiving wage loss compensation for any period during which such compensation is requested, the claimant shall demonstrate that he or she has:

(i) Complied with paragraph (C)(2) of this rule and, if applicable, with paragraph (C)(3) of this rule [relating to the submission of medical evidence];

(ii) Sought suitable employment with the employer of record at the onset of the first period for which wage loss compensation is requested. The claimant shall also seek suitable employment with the employer of record where

there has been an interruption in wage loss compensation benefits for a period of three months or more; and
(iii) Registered with the Ohio bureau of employment services and begun or continued a job search if no suitable employment is available with the employer of record.

(b) A claimant may first search for suitable employment which is within his or her skills, prior employment history, and educational background. If within sixty days from the commencement of the claimant's job search, he or she is unable to find such employment, the claimant shall expand his or her job search to include entry level and/or unskilled employment opportunities.

(c) A good faith effort to search for suitable employment which is comparably paying work is required of those seeking non-working wage loss and of those seeking working-wage loss who have not returned to suitable employment which is comparably paying work, except for those claimants who are receiving public relief and are defined as work relief employees in Chapter 4127. of the Revised Code. A good faith effort necessitates the claimant's consistent, sincere, and best attempts to obtain suitable employment that will eliminate the wage loss.

{¶ 57} Ohio Adm.Code 4125-1-01(D)(1)(c) provides certain relevant factors to be considered by the commission in evaluating whether claimant has made a good-faith effort. Those factors including: claimant's skills, prior employment history, and educational background; the number, quality, and regularity of contacts made with prospective employers; for a claimant seeking any amount of working wage loss compensation, the amount of time devoted to making prospective employer contacts during the period for which working wage loss is sought, as well as the number of hours spent working, any refusal by claimant to accept assistance from the BWC in finding employment; any refusal by claimant to accept the assistance of any public or private employment agency; labor market conditions; claimant's physical capabilities; any recent activity on the part of claimant to change her place of residence and the impact such change would have on the reasonable probability of success and the search for employment; claimant's economic status; claimant's documentation of efforts to produce self-employment income; any part-time employment engaged in by claimant

and whether that employment constitutes a voluntary limitation on claimant's present earnings; whether claimant restricts her search to employment that would require her to work fewer hours per week than she worked in the former position of employment; and whether, as a result of physical restrictions, claimant is enrolled in a rehabilitation program.

{¶ 58} As above indicated, Ohio Adm.Code 4125-1-01(A)(7) defines "suitable employment" as work which is within the claimant's physical capabilities and which may be performed subject to all physical, psychiatric, mental, and vocational limitations resulting from the allowed conditions in the claim.

{¶ 59} In the present case and as noted by the SHO, relator has significant physical and mental limitations which affect his ability to work and which would affect his ability to search for suitable employment.  The medical evidence presented by Dr. Mysiw indicates that relator's cognitive, memory, and concentration impairments cause significant problems; his attention impairments severely limit his daily activity; he becomes fatigued quickly and needs to pace and take breaks more often; his mental fatigue is associated with decreased frustration tolerance and increased irritability; he needs to rest more than one hour after the onset of mental fatigue, his mental fatigue is a significant headache trigger and causes impairment several times a day; and that activities requiring serious mental effort cause him to feel slow and sluggish even when he is carrying out his every day basic activities of daily living.  Dr. Mysiw stated that relator is not only mentally impaired, but his mental impairment and his efforts to function cause him to feel more fatigued.

{¶ 60} Although Ohio Adm.Code 4125-1-01(D)(1)(c) does not specifically identify a claimant's mental capabilities or limitations as a relevant factor to be considered in evaluating whether a claimant has made a good-faith effort to secure suitable employment, it certainly can be.  While a claimant's educational background is included as a relevant factor to be considered, it stands to reason where a claimant's mental impairment affects his/her ability to work and consequently his ability to search for suitable employment, then a claimant's mental impairment should be considered as well.

{¶ 61} At oral argument, counsel for both respondents repeatedly stated that there is no evidence to support the SHO's decision to excuse relator from searching for other employment. However, the commission exercised continuing jurisdiction based on a clear mistake of law and *not* a clear mistake of fact. The magistrate finds there is no clear mistake of law here.

{¶ 62} In *State ex rel. Yates v. Abbott Laboratories, Inc.,* 95 Ohio St.3d 142, 2002-Ohio-2003, the Supreme Court of Ohio emphasized that these determinations must be made on a case-by-case basis, stating: "In reality, the issue comprises two questions: (1) Is a job search necessary and (2) if so, what is required?" *Id.* at 146-47. After acknowledging that it had not been confronted with the first question within the context of regular full time employment, the court went on to state: "What other cases have so far taught, however, is that the question is not amenable to hard-and-fast rules-- it is very dependent on circumstances." *Id.* at 147.

{¶ 63} *Yates* further directed:

> [T]he overriding concern in all of these cases--as it has been since the seminal case of *State ex rel. Pepsi-Cola Bottling Co. v. Morse* (1995), 72 Ohio St.3d 210, 648 N.E.2d 827--is the desire to ensure that a lower-paying position--regardless of hours--is necessitated by the disability and not motivated by lifestyle choice.

*Id.* at 147.

{¶ 64} While the magistrate is cognizant that the present case presents a different factual scenario than the court has considered before (a part-time job that included the promise of a full-time position in *State ex rel. Brinkman v. Indus. Comm.,* 87 Ohio St.3d 171 (1999)); (an inability to return to the former position of employment followed by a return to college and securing employment which the claimant should not be expected to leave in *State ex rel. Ameen v. Indus. Comm.,* 100 Ohio St.3d 161, 2003-Ohio-5362)), what is clear here is that the SHO evaluated this case and determined that, given relator's mental and physical limitations, this part-time job working four to six hours per week was within the mental and physical limitations as set out by Dr. Mysiw and did not allow relator the ability to search for a different job. While the commission

may disagree with the SHO's factual determination and application of the law to those facts, it is clear that the SHO applied the proper standard.

{¶ 65} Finding that there was no clear mistake of law, it is this magistrate's decision that the commission did abuse its discretion when it invoked its continuing jurisdiction vacating the SHO's order, and this court should issue a writ of mandamus ordering the commission to reinstate that order and award relator WWL compensation.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).