[Cite as *State ex rel. Coltrane v. Indus. Comm.*, 2021-Ohio-3421.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Robert Coltrane, | : | |
| Relator, | : | |
| v. | : | No. 20AP-338 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

D E C I S I O N

Rendered on September 28, 2021

**On brief:** *Becker & Cade,* and *Dennis A. Becker,* for relator.

**On brief:** *Dave Yost,* Attorney General, and *Cindy Albrecht,* for respondent Industrial Commission of Ohio.

**On brief:** *Sybert, Rhoad, Lackey & Swisher, LLC, Brant K. Rhoad,* and *Matthew S. Goff,* for respondent Sorenson Communications, LLC.

IN MANDAMUS

JAMISON, J.

{¶ 1} In this original action, relator Robert Coltrane, seeks a writ of mandamus compelling respondent, the Industrial Commission of Ohio, to vacate its order finding that relator is not entitled to working wage loss compensation, and enter an order granting such compensation.

{¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued a decision that included findings of fact and conclusions of law, then recommended that this court deny the requested writ of mandamus (attached as appendix). Relator did not file an objection to the magistrate's decision.

{¶ 3}   Pursuant to Civ.R. 53(D)(4), the court conducted a full review of the magistrate's decision.  The court finds that there is no error of law or other defect upon the face of the decision.  Therefore, the court adopts the magistrate's decision as its own, including the findings of fact and conclusions of law contained therein, and denies the requested writ of mandamus.

*Writ of mandamus denied.*

SADLER and MENTEL, JJ., concur.

————————————

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Robert Coltrane, | : | |
| Relator, | : | |
| v. | : | No.  20AP-338 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on April 29, 2021

*Becker & Cade,* and *Dennis A. Becker,* for relator.

*Dave Yost,* Attorney General, and *Cindy Albrecht,* for respondent Industrial Commission of Ohio.

*Sybert, Rhoad, Lackey & Swisher, LLC, Brant K. Rhoad,* and *Matthew S. Goff,* for respondent Sorenson Communications, LLC.

IN MANDAMUS

{¶ 4}   Relator, Robert Coltrane, seeks a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order finding that relator is not entitled to working wage loss compensation ("WWLC"), and enter an order granting such compensation.

Findings of Fact:

{¶ 5}   1. Relator, a professional sign-language interpreter, sustained an injury classified as an occupational disease arising in the course and scope of his employment with Sorenson Communications, LLC.

{¶ 6}   2. Relator's claim was allowed with a date of injury of November 2, 2016 for stenosis, tenosynovitis of right ring finger.

{¶ 7}   3. At the time of injury, relator performed part-time work as an interpreter for Sorenson Communications, and also worked full time with his own company, Deaf Choice, Inc.

{¶ 8}   4. The Ohio Bureau of Workers' Compensation ("BWC") allowed the condition by order mailed November 9, 2016 designating Sorenson Communications as the responsible employer.  Sorenson Communications filed an appeal.  (Stip. at 10.)

{¶ 9}   5. Relator's treating physician Edward A. Marcheschi, M.D., completed a series of BWC Medco-14 ("Physician's Report of Work Ability") forms indicating that relator was unable to perform his prior job and should be off work entirely.  (Stip. at 18, 22, 28, 34.)

{¶ 10} 6. Successive district hearing officer ("DHO") and staff hearing officer ("SHO") orders on May 10 and August 24, 2017 overruled Sorenson Communications' appeal and allowed the claim as granted by BWC.  (Stip. at 40, 43.)

{¶ 11} 7. Relator was referred to Mark Yuhas, M.D., for evaluation and possible surgery.  (Stip. at 58-59.)  Dr. Yuhas performed surgery on November 14, 2017.  (Stip. at 91.)  Dr. Yuhas released relator to perform full job duties effective December 18, 2017. (Stip. at 60, 62.)

{¶ 12} 8. Relator applied for WWLC on June 22, 2018, requesting compensation paid from November 1, 2016 through December 18, 2017.  (Stip. at 73.)  With his application, relator included an affidavit indicating that his medical restrictions prevented his return to work for Sorenson Communications, while he continued to perform "ownership duties" for his own company, Deaf Choice:

> This Affidavit is being given to provide information in support of the Application for Wage Loss Benefits for the period of November 1, 2016 through December 5, 2017.
>
> At the time of injury, November 1, 2016, I was employed working two jobs as set forth in the previous Wage Affidavit as an owner operator of Deaf Choice and as an employee of Sorenson Communications.

> At the time of injury, I was no longer permitted to do signing activities and thus performed no services for Sorenson Communications during the period of November 1, 2016 to December 5, 2017; at which time I was released to perform full duty activities, i.e. with no further medical restrictions.
>
> During the period of November 1, 2016 through December 5, 2017 I continued to perform ownership duties with Deaf Choice but performed no signing interpretive services for Deaf Choice.
>
> Because of the restrictions, my earnings were reduced as reflected in the attached statement from Deaf Choice, indicating my earnings for the period in question.

(Stip. at 75.)

{¶ 13} 9. Dr. Marcheschi submitted a Medco-14 dated November 21, 2017, again certifying relator as unable to return to work.

{¶ 14} 10. Relator submitted his pay records from Deaf Choice and Sorenson Communications for 2016 and 2017, including W2s from both companies. (Stip. at 77, 80-90.) Relator reported $45,405.21 in wages in 2016 and $38,833.17 in wages in 2017 from Deaf Choice. (Stip. at 77-78, 84.) Relator reported $12,108.51 in wages from Sorenson Communications in 2016 and $738.68 in wages from Sorenson Communications in 2017. (Stip. at 87, 89.)

{¶ 15} 11. A DHO issued an order on November 16, 2018, denying the requested WWLC from November 1, 2016 through December 18, 2017. (Stip. at 96.)

{¶ 16} 12. On further appeal, an SHO heard the matter on October 10, 2019 and issued an order on October 16, 2019 upholding the DHO's order as follows:

> It is the finding of the Hearing Officer that the order of the District Hearing Officer, issued 11/16/2018, is affirmed with additional reasoning.
>
> It is the order of the Staff Hearing Officer that the Injured Worker's C-140 initial Application for Wage Loss Compensation, filed 06/22/2018 be denied.
>
> The Injured Worker's C-140, filed 06/22/2018 requests payment of working wage loss compensation for the period of 11/02/2016 through 12/18/2017.

The Hearing Officer finds that the Injured Worker has failed to meet his burden of proof of demonstrating that he has complied with the wage loss rules as set forth in Ohio Adm.Code 4125-1-01. Therefore, the Hearing Officer denies the Injured Worker's request for payment of working wage loss compensation.

The Hearing Officer finds that prior to the Injured Worker contracting an occupational disease in this claim, the Injured Worker worked two jobs, one as an owner/operator of Deaf Choice and a second job with the employer of record, Sorenson Communications, as a sign language interpreter. The Injured Worker's employment as the owner/operator of Death [sic] Choice required the Injured Worker to work as a sign language interpreter as well as engage in administrative functions including training and evaluating interpreters and completing paperwork. Following the occupational disease in this claim, the Injured Worker testified that he continued to work as an owner/operator of Death [sic] Choice but was unable to continue as a sign language interpreter. Further, following the occupational disease, the Injured Worker was unable to return to his employment with the employer of record Sorenson Communications as a sign language interpreter. The Injured Worker's inability to return to his position of employment as a sign language interpreter with Sorenson Communications was based upon the medical documents from Edward Marcheschi, M.D. dated 11/02/2016 and 11/21/2017.

The Injured Worker is requesting payment of working wage loss compensation based upon his inability to return to his position of employment as a sign language interpreter with Sorenson Communications.

* * *

In the present case, the Hearing Officer finds that there is no evidence that the Injured Worker engaged in a good faith job search for suitable employment. The Hearing Officer finds that there is no record of a job search or any evidence that the Injured Worker attempted to find employment that would eliminate his loss in wages.

* * *

> The Hearing Officer finds that the Injured Worker has failed to meet his burden of proof of demonstrating that he has complied with the wage loss rules as set forth in Ohio Adm.Code 4125-1-01 as he has failed to engage in a good faith effort to search for suitable employment which is required of individuals seeking working wage loss compensation. Therefore, the Hearing Officer denies the Injured Worker's request for payment of working wage loss compensation from 11/02/2016 through 12/18/2017.

(Stip. at 100.)

{¶ 17} 13. The commission refused relator's appeal from the SHO's order. (Stip. at 104.)

{¶ 18} 14. Relator filed his complaint for writ of mandamus on July 2, 2020.

Discussion and Conclusions of Law:

{¶ 19} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 20} Relator asserts he has a clear legal right to a writ of mandamus because the commission abused its discretion when it found that relator had not met his burden of proof to establish that he had either engaged in a good-faith effort to find suitable employment or complied with wage loss rules as set forth in Ohio Adm.Code 4125-1-01, and that he was therefore not entitled to WWLC. Relator asserts that the commission applied the incorrect standard to his application, and further asserts that Ohio Adm.Code

4125-1-01 as amended effective June 26, 2017 is deficient because it fails to define specific guidance for WWLC applicants with dual employment.

{¶ 21} Wage loss compensation is provided under R.C. 4123.56(B) to compensate for the wage loss of persons who are unable to return to a former position of employment due to an allowed condition. *State ex rel. Oldaker v. Indus. Comm.,* 143 Ohio St.3d 405, 2015-Ohio-2569, ¶ 8. Entitlement to wage loss compensation first requires the claimant to demonstrate that the allowed conditions actually caused a wage loss. *Id.* The claimant must also demonstrate that the claimant has made a search for suitable employment to mitigate the loss of income caused by the allowed conditions. *Id.* Such compensation may be classified as either WWLC or non-working wage loss compensation, with correspondingly different requirements and benefits. Ohio Adm.Code 4125-1-01(A)(8) and (15); Ohio Adm.Code 4125-1-01(C) and (D). WWLC applies to claimants who, like relator here, suffer a wage loss but are still able to work on a limited basis. *Oldaker* at ¶ 8.

{¶ 22} The Administrative Code defines the requisite wage loss as follows:

> "Non-working wage loss" means the dollar amount of the diminishment in wages sustained by an injured worker who has not returned to work because he or she has been unable to find suitable employment despite a good faith job search (as described in paragraph (E)(1)(c) of this rule). However, the extent of the diminishment must be the direct result of physical and/or psychiatric restrictions caused by the impairment that is causally related to an industrial injury or occupational disease in a claim allowed under Chapter 4123. of the Revised Code.

{¶ 23} The Administrative Code further defines suitable employment as follows:

> "Non-working wage loss" means the dollar amount of the diminishment in wages sustained by an injured worker who has not returned to work because he or she has been unable to find suitable employment despite a good faith job search (as described in paragraph (E)(1)(c) of this rule). However, the extent of the diminishment must be the direct result of physical and/or psychiatric restrictions caused by the impairment that is causally related to an industrial injury or occupational disease in a claim allowed under Chapter 4123. of the Revised Code.

{¶ 24} Finally, the Administrative Code defines comparably paying work as follows:

> "Comparably paying work" means suitable employment in which the injured worker's weekly rate of pay is equal to or greater than the average weekly wage of the injured worker.

{¶ 25} Current Ohio Adm.Code 4125-1-01(D), as amended effective June 26, 2017, governs applications for WWLC and specifies the steps an applicant must take to substantiate the applicant's attempts to mitigate the claimed wage loss:

> (D) Working wage loss compensation. —
> Except as otherwise provided in paragraphs (D)(4) and (D)(5) of this rule, an injured worker applying for or receiving working wage loss compensation shall supplement his or her wage loss application with a job search statement describing the injured worker's search for comparably paying work unless excused by the bureau of workers' compensation, the industrial commission, or the self-insuring employer in self-insured employer claims.
>
> (1) Unless a job search has been excused by the bureau of workers' compensation, the industrial commission, or the self-insuring employer in self-insured employer claims, the job search statements shall comply with the following requirements:
>
> (a) Job search statements shall be submitted for every week where working wage loss compensation is sought;
>
> (b) The completed job search statements shall be submitted with any subsequent request for working wage loss compensation;
>
> (c) An injured worker who receives working wage loss compensation for periods after the filing of the application for wage loss compensation shall submit the job search statements completed pursuant to this rule, at a minimum, every four weeks to the bureau of workers' compensation or the self-insuring employer in self-insured employer claims during the period when working wage loss compensation is requested;
>
> (d) Job search statements shall include the name and address of each employer contacted, the employer's telephone

number, the position sought, a reasonable identification by name or position of the person contacted, the date and method of contact, for on-line job searches, a copy of the on-line posting and verification of the application submission, the result of the contact, and any other information required by the bureau of workers' compensation job search statement;

(2) Job search statements shall be submitted on forms provided by the bureau of workers' compensation or equivalent forms.

(3) Failure to perform a job search as required by paragraph (D) of this rule will be construed as a voluntary limitation of income in accordance with paragraph (G)(2) of this rule.
Further requirements are specified at Ohio Adm.Code 4125-1-01(E):

In considering an injured worker's eligibility for wage loss compensation the adjudicator shall give consideration to, and base the determinations on, evidence in the file, or presented at hearing, relating to:

(1) The injured worker's search for suitable employment when required under the provisions of this rule.

(a) As a prerequisite to receiving * * * working wage loss compensation * * * for any period during which such compensation is requested, the injured worker shall demonstrate that he or she has:

(i) Complied with paragraph (B)(2) of this rule and, if applicable, with paragraph (B)(3) of this rule;

(ii) Sought suitable employment with the employer of record at the onset of the first period for which wage loss compensation is requested unless the injured worker establishes that it would be futile to seek suitable employment with the employer of record. (e.g. The injured worker was discharged or the employer of record is out of business.); and

(iii) In the case of non-working wage loss, the injured worker must register with the Ohio department of job and family services or, if the injured worker is an out-of-state resident, must register with the equivalent of the Ohio department of job and family services in the state of residence and begin or continue a job search if no suitable employment is available

with the employer of record. Proof of registration with the applicable agency is required for both in-state and out-of-state residents to demonstrate compliance with this rule.

(b) An injured worker may first search for suitable employment which is within his or her skills, prior employment history, and educational background. If within sixty days from the commencement of the injured worker's job search, he or she is unable to find such employment, the injured worker shall expand his or her job search to include entry level and/or unskilled employment opportunities.

(c) A good faith effort to search for suitable employment that is comparably paying work is required of those seeking non-working wage loss compensation pursuant to paragraph (C) of this rule and of those seeking working-wage loss compensation pursuant to paragraph (D) of this rule, who have not returned to suitable employment that is comparably paying work, except for those injured workers who are receiving public relief and are defined as work relief employees in Chapter 4127. of the Revised Code. A good faith effort necessitates the injured worker's consistent, sincere, and best attempts to obtain suitable employment that will eliminate the wage loss.

{¶ 26} The general thrust of these provisions is to ensure that the claimant has made a " 'good faith effort to search for suitable employment which is comparably paying work.' " *State ex rel. Roberts v. Indus. Comm.,* 10th Dist. No. 15AP-892, 2016-Ohio-7570, ¶ 6, quoting former Ohio Adm.Code 4125-1-01(D)(1)(c).

{¶ 27} Relator first argues that the commission applied the wrong standard to his application because his period of lost wages extends from November 1, 2016 through December 18, 2017, and the latest amendments to Ohio Adm.Code 4125-1-01 intervened in June 2017. Relator appears to argue that any regulatory changes would be prospective only, and that the former version of Ohio Adm.Code 4125-1-01 should govern the first months of his application period. Without disagreeing with relator's view on the presumptively prospective effect of such amendments, the magistrate must note that relator does not point out any substantive changes to the pertinent WWLC sections that would impact his application, nor does an independent review of the former and current versions reveal any meaningful variation. The commission therefore did not err in its application of the standard of review for relator's WWLC application.

{¶ 28} Moreover, in the present case, relator does not argue that he in fact fulfilled the precise and extensive documentation requirements of Ohio Adm.Code 4125-1-01, but rather that the unique factual circumstances of his position as an employee with dual employment, and the Administrative Code's complete failure to address WWLC under such circumstances, excuses him in some manner from the documentation and good faith job search requirements. Factually, it is undisputed that relator worked for both his own company, Deaf Choice, and Sorenson Communications. Relator's affidavits, and apparently his testimony before the DHO and SHO, which is not available in the record, state that relator continued to work for Deaf Choice performing administrative functions but not working as a sign-language interpreter, and worked not at all for Sorenson Communications. What relator does not articulate is how continued work, in a lesser capacity, for one of his dual employers would excuse a job search to replace the lost wages from the second position (and to a lesser extent, a reduction in wages from the first). The Ohio Administrative Code is explicit and detailed regarding the documentary requirements needed to establish a qualifying job search. While relator has indisputably suffered a reduction in wages, the fact that this reduction is spread across two former employers does not excuse compliance with the documentation requirements to establish his job search for replacement income.

{¶ 29} The Ohio Administrative Code requires an applicant for WWLC to provide specific documentation to prove the applicant's search for comparably paying work to eliminate the loss of wages. Relator does not dispute that he furnished no such documentation, but asserts that as long as he remained working with Deaf Choice, he was not required to demonstrate such entitlement to compensation for the loss of his Sorenson Communications wages. The commission applied the proper legal standard when it stated that relator had not undertaken the required search for replacement comparable work. This court may not read an exception into the code that does not exist. The commission in this case stated its rationale and explained the evidence — undisputed, as relator admits in this action — upon which it relied when it correctly applied the wage loss rules to relator's request. Relator did not fulfill his burden of proof to demonstrate entitlement to WWLC, and the commission did not abuse its discretion in denying that

application.  For those reasons, it is the magistrate's decision and recommendation that no writ shall issue in this case.

/S/ MAGISTRATE
MARTIN L. DAVIS